IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARTHA KAY BAIRD HOOKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No.:   7:23cv00750 |
| CHERYL FACCIANI, *in her individual* ) | |
| *and official capacity*, ) | |
| ) | |
| TIMOTHY GREENWAY, *in his individual* ) | |
| *and official capacity*, ) | |
| ) | |
| BRENT HUDSON, *in his individual* ) | |
| *and official capacity*, ) | |
| ) | |
| DR. KEN NICELY *in his individual* ) | |
| *and official capacity*, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

COMES NOW, Plaintiff Martha Kay Baird Hooker (hereinafter, "Plaintiff" or "Ms. Hooker") by counsel, and hereby presents this Complaint against Defendants Cheryl Facciani, Timothy Greenway, Brent Hudson, and Ken Nicely all in their official capacities. In support thereof, Ms. Hooker provides as follows:

**STATEMENT OF FACTS**

**A. The Parties**

1. Ms. Hooker is a lifelong educator. In May of 2021, she retired from a nineteen-year career spent teaching in Roanoke County Public Schools ("RCPS"), from 2002 to 2021.

2. Ms. Hooker has also been a civic leader for years. She has served as an elected official and has been appointed to public boards and commissions throughout southwest

Virginia. Specifically, Ms. Hooker was the Glenvar Middle School PTA President from 1999 – 2001, served on the Roanoke County Planning Commission from 1992 – 2015, and has been on the Roanoke County Board of Supervisors ("the BOS") since 2016.

3. Ms. Hooker currently serves as Chairwoman of the Roanoke County Board of Supervisors.

4. Ms. Hooker was first elected to the BOS in November 2015 and began serving in January 2016, representing the Catawba District.

5. Defendant Cheryl Facciani is a Board Member of RCPS.

6. Defendant Timothy Greenway is a Board Member of RCPS.

7. Defendant Brent Hudson, Chairman, is a Board Member of RCPS.

8. Defendant Dr. Ken Nicely is the Superintendent of RCPS and is responsible for RCPS employment decisions such as terminations.

9. All the parties to this action are domiciled in Roanoke, County, Virginia.

**B. Employment with RCPS: Work Based Learning Coordinator**

10. Ms. Hooker began a period of retirement from education in May of 2021. At that time, Jason Suhr, Director of Career and Technical Education, approached her with an opportunity to continue working for RCPS. Because Ms. Hooker had been a marketing and business teacher, working with Jason Suhr in the CTE department was a natural fit for her.

11. Ms. Hooker agreed and was hired as the Work Based Learning Coordinator. This job included the following essential functions as provided in a written description:

    a. Assist base high school administrators with meeting CCCRI (College, Career and Civic Readiness Index) criteria;

b. Attend monthly Virginia Work-Based Learning Collaboration group meetings;

c. Join Association for Career and Technical Education's WBL Section group and attend meetings;

d. Collaborate with Virginia Department of Education Work-Based Learning State Specialist;

e. Build out more Work-Based Learning opportunities (i.e.: School-Based Enterprise, Externships, Job Shadow, Internships) for RCPS students using Virginia Department of Education's Work-Based Learning Guide as a template;

f. Coordinate an event that shows gratitude to our sponsor/partner companies;

g. Coordinate Registered Apprenticeship Signing Day and Showcase events (most recently on May 5, 2023 at the Salem Red Sox game in coordination with the Salem-Roanoke County Chamber of Commerce);

h. Maintain and develop positive relationships with business and industry;

i. Be the point-of-contact for Registered Apprentices and other Work-Based Learning opportunities – grading, evaluations, concerns, paperwork;

j. Ensure Work-Based Learning opportunities are completed with fidelity per guidelines provided in the Virginia Department of Education Work-Based Learning Guide;

k. Coordinate with teachers who organize Co-operative Education, internships and clinicals in current programs;

l. Collaborate with Roanoke County Public Schools Data-Based Administrator to ensure Work-Based Learning experiences are recorded for all students involved;

m. Work with students to incorporate Work-Based Learning opportunity(s) into their Profile of a Graduate;

n. Collaborate with Virginia Department of Labor & Industry on Registered Apprenticeship work processes;

o. Ensure background checks are completed on mentors/businesses;

p. Collaborate with Counseling to ensure student schedules are maximized for Work-Based Learning experience during the school day;

q. Collaborate with base schools on individual career fair efforts;

r. Develop publicity information and handouts in collaboration with Chuck Lionberger, Director of Community Relations, Roanoke County Schools;

s. Collaborate with secondary Counselors to promote Work-Based Learning opportunities;

t. Attend civic organization and chambers of commerce meetings to network and promote Work-Based Learning opportunities for Roanoke County students;

u. Effectively use VAVoyager and/or MajorClarity as a tool to connect students and employers with each other;

v. Communicate regularly with the Career & Technical Education (CTE) Director (Jason Suhr) and ensure the CTE Director is involved with Roanoke County Public School-wide decisions;

12. Ms. Hooker excelled at her job. She received praise from coworkers, students, and her supervisor, Mr. Suhr, CTE Director;

13. At no time in the history of her employment with RCPS, has Ms. Hooker ever received workplace discipline or a performance improvement plan.

14. Whenever Ms. Hooker received a written work performance evaluation, she met and/or exceeded expectations.

15. Ms. Hooker worked on average, about two days per week in this role and was paid via the Virginia Retirement System's early retirement program. Ms. Hooker received her wages and this retirement benefit due to her employment with RCPS.

16. At all times pertinent to this Complaint, Ms. Hooker was an employee of RCPS.

17. Throughout her employment, Ms. Hooker was consistently requested to work more hours because of her positive performance and reception. Mr. Suhr requested on March 10, 2023 that Ms. Hooker continue to work beyond her VRS contract through the 2023-2024 school year and Ms. Hooker accepted the verbal agreement.

18. After her acceptance, Mr. Suhr sent Ms. Hooker this email:

> **From:** Jason Suhr
> **Sent:** Monday, March 13, 2023 7:50 AM
> **To:** Martha Hooker
> **Subject:** RE: next year
>
> Good Morning Martha,
>
> I appreciate you taking time to mull this option for next year and for the quicker-than-anticipated response. This is great news! I spoke with Jim Bradshaw and he said we can do away with the time sheet (after your EWPP days are done). Let's put out our heads together in the next couple weeks to iron out the amount of time you are comfortable committing to.
>
> Thanks again Martha.
>
> Jason

    Jason Suhr

    Director, Career & Technical Education

### C. The Two Boards

19. At all times pertinent to this matter, RCPS and its officials were aware that Ms. Hooker served on the BOS.

20. Due to her role as a County leader and a teacher working for RCPS, Ms. Hooker had requested legal opinions from the Roanoke County Attorney's Office, in order to avoid any appearance of impropriety, on multiple occasions to ensure that no conflict of interest existed due to her roles.

21. Ms. Hooker consistently received information from Roanoke County throughout the years that no such conflict of interest existed and disclosed her employment with RCPS when voting on school issues.

22. As an example, Ms. Hooker solicited the legal opinion of Roanoke County's Office of the Attorney regarding this issue. In 2016, the presiding attorney wrote the following:

> This is an official opinion letter which I have drafted specifically upon your request. Previously, you spoke with the prior County Attorney, Paul M. Mahoney, regarding any potential conflict of interest that could arise from your running for the position on the Board of Supervisors while continuing your long time employment with the Roanoke County School Board. At that time, I was employed here as a Senior Assistant County Attorney, was aware of those conversations, and understood Mr. Mahoney's opinion to be that no conflict existed in your running for office. I will outline the reasoning herein, in which I personally concur.

23. At no time during the entirety of her employment were any concerns expressed or any appearance of impropriety or conflict of interest ever noted regarding Ms. Hooker's role with the BOS and her employment with RCPS. Dr. Nicely uttered the words, "conflict

of interest" multiple times as the cited reason for Ms. Hooker's termination during their May 30, 2023 meeting.

24. Prior to 2023, at no time did any employee of RCPS ever state to Ms. Hooker that a conflict of interest had developed regarding Ms. Hooker's role with the BOS and her employment with RCPS as the Work-Based Learning Coordinator.

**D. 2023 Political Race and Tensions**

25. In early 2023, there was growing frustration between the two boards regarding funding for the new CTE center (Current Burton Center for Art and Technology) and two elementary schools that still had open classroom concepts (William E. Cundiff Elementary School and Glen Cove Elementary School).

26. RCPS receives funding from the BOS. For years this funding had been provided to RCPS in a single lump sum payment. In the Fall of 2022, the BOS discussed RCPS distribution of funding for FY 23-24. The BOS voted unanimously on appropriating funds to RCPS by categories and classification of expenditures (as defined by state code 22.1-115). The BOS voted unanimously on this proposal to increase transparency and accountability.

27. This vote altered the way in which RCPS would receive funds from the BOS. RCPS would no longer receive a lump sum payment, but would receive structured appropriations over a period of time. Upon information and belief, this angered the Defendants.

28. A second unanimous vote occurred in the Spring of 2023 regarding approval of funding for a Career and Technical Education ("CTE") Center and the remodeling of two elementary schools. This vote was an example of a funding appropriation made by the BOS regarding facilities managed by RCPS.

29. On April 7, 2023, local media outlets announced the historic funding for the schools. On April 11, 2023, Roanoke County approved the funding by resolution 041123-2. On April 20, 2023, the schools approved the agreement by resolution 042023-1.

30. Ms. Hooker voted in line with her colleagues and at all times pertinent, Defendants were aware of Ms. Hooker's votes.

31. These votes, expressions of Ms. Hooker's own first amendment rights, angered Defendants. After the first vote in 2022, Defendant's openly expressed dissatisfaction with the BOS decision in public statements throughout 2023. Defendant Hudson personally telephoned Ms. Hooker, in her role as Chairman, to complain about the votes.

32. It was well known among Members of both the BOS and RCPS School Board that the votes of the BOS had caused friction and Defendants were upset.

33. Ms. Hooker exercised her rights by engaging in discourse with Defendants regarding her right to vote to distribute revenues into allocated funding. Ms. Hooker engaged in these communications throughout 2022 and into the Spring of 2023. None of these communications ever touched upon any job duty, project, assignment, or goal related to Ms. Hooker's employment. All communications were strictly upon a matter of public concern.

34. The method and/or timing of RCPS funding does not interfere with or touch upon the daily job duties of a Work-Based Learning Coordinator. RCPS funding and the method or timing of such payments is a clear matter of public concern.

35. Defendant Hudson informed Ms. Hooker via multiple phone calls during the Spring 2023 school semester that for the BOS to pay RCPS in allocated funding was "unacceptable and will be an ongoing roadblock to our relationship." Mr. Hudson spoke

to Ms. Hooker in a derogatory tone and adopted a hostile demeanor during their conversations.

36. Ms. Hooker's voting decision was based upon a matter of public concern and a clear expression of her right to express speech.

37. Ms. Hooker publicly announced on January 28, 2023 that she intended to run for reelection in 2023.

38. Ms. Hooker and the Defendants identify politically as Republicans. However, dissention and disagreement were intense among the two boards within the Republican party.

39. Defendants openly supported Ms. Hooker's political opponent in the 2023 Republican primary during the BOS campaign. Indeed, on April 7, 2023, Defendants chose to participate in a photo opportunity with Ms. Hooker's opponent instead of attending the joint signing of the historic $130 million funding MOU for the new CTE School and elementary schools remodeling. This was not coincidental.

40. This photo opportunity was seemingly in contravention of state law as a gathering of three or more School Board Members to conduct public business requires public notice to discuss said business and is otherwise responsive to the Freedom of Information Act.

### E.  RCPS Retaliates and Terminates Ms. Hooker

41. Defendants Facciani, Hudson, and Greenway determined to retaliate against Ms. Hooker for her political activities.

42. Defendants Facciani, Hudson, and Greenway determined to terminate Ms. Hooker's employment without a public meeting or even a meeting of the full School Board. In fact, two School Board Members, David Linden and Mike Wray, were not

notified of the decision to terminate Ms. Hooker until after it had occurred. This decision violated established practices and procedures of RCPS.

43. RCPS Board Members Linden and Wray supported Ms. Hooker in the BOS race and were intentionally kept in the dark regarding the retaliatory scheme hatched by Defendants.

44. Ms. Hooker was made aware of this decision on May 30, 2023 at 1:00 PM at a meeting scheduled weeks prior by Jason Suhr. This meeting had originally been scheduled and calendared to discuss a specific work project. But when the meeting began, Mr. Suhr informed Ms. Hooker she could no longer continue in her role as Work-Based Learning Coordinator. Ms. Hooker was stunned. Ms. Hooker called Mr. Linden after her dismissal and discovered that he was unaware of the action. Mr. Linden then contacted Mr. Wray and found that he was also unaware of the action.

45. During the May 30th meeting, Mr. Suhr expressed to Ms. Hooker, with seeming reluctance, that the RCPS School Board had made the decision to terminate her employment as a WBL Coordinator effective immediately even though Ms. Hooker "had done a good job." Mr. Suhr mentioned "tension" among the RCPS Board and Ms. Hooker as a reason behind the termination, but he did not elaborate.

46. On May 30, 2023 at 5:00 PM, Ms. Hooker arranged to meet with RCPS Superintendent Kenneth Nicely ("Dr. Nicely") to discuss her termination. Ms. Hooker recounted that had she had repeatedly been cleared of any known or potential conflict of interest and had a letter from the County Attorney that declared such and had never been advised that such a conflict existed prior to her termination. Ms. Hooker also asked Dr. Nicely if she had done anything wrong. Dr. Nicely assured Ms. Hooker that she did a good job and that he had seen her "in action," and her performance was good.

47. As Superintendent, Dr. Nicely is the highest ranking executive employe of RCPS. Policy and practice dictate that Dr. Nicely makes personnel decisions such as terminations. Ms. Hooker questioned why she should be fired if she was doing a great job and why Dr. Nicely approved of the termination.

48. Dr. Nicely stated that he believed, "the School Board does not want you working [for RCPS] and being a member of the BOS at the same time." Dr. Nicely emphasized that this decision was made by a majority of the RCPS Board and not himself. "I was not willing to die on that hill," he stated to Ms. Hooker.

49. While he serves at the behest of the RCPS Board, it is highly unusual for active RCPS Board members to initiate terminations from employment. Ms. Hooker questioned Dr. Nicely regarding the school board's involvement in a personnel decision and he said, "Sometimes the school board gets out of their lane."

50. No legitimate reason justified the termination of Ms. Hooker.

51. Ms. Hooker was terminated due to politically minded retaliation in violation of the 1st Amendment of the United States Constitution.

52. Approximately a week after her termination, Ms. Hooker received text messages from Defendant Greenway offering to meet with Ms. Hooker and stating further in part:

   a. "I always feel better when I speak to people directly and it's not hearsay. No chance of misunderstanding."

   b. "I know you are upset and thought it couldn't hurt to speak with each other. . . . I assure there's no agenda whatsoever."

53. Ms. Hooker has suffered pecuniary and non-pecuniary losses, emotional distress, and reputational harm due to the acts and omissions of Defendants.

### COUNT I: FIRST AMENDMENT FREEDOM OF EXPRESSION RETALIATION AND WRONGFUL TERMINATION IN VIOLATION OF 42 U.S.C § 1983

54. Ms. Hooker incorporates by reference herein the preceding paragraphs of this Complaint.

55. Ms. Hooker engaged in political speech, to-wit:

    a. Her campaign for her 2023 reelection;

    b. Her votes as an elected member of the BOS; and

    c. Her discussions with Defendants as a BOS Member regarding RCPS funding allocation.

56. Ms. Hooker did not have a personal interest in exercising her freedom of speech. She expressed her opinions as a citizen and a public servant.

57. Defendants violated Ms. Hooker's First Amendment rights such that a cause of action arose under 42 U.S.C. § 1983.

58. The Defendants were, or should have been, aware that they violated Ms. Hooker's First Amendment rights when they terminated Ms. Hooker because of her protected political speech.

59. Defendants acted with reckless and/or callous indifference to Ms. Hooker's legal rights when they terminated Ms. Hooker because of this speech.

WHEREFORE, Plaintiff Martha Kay Baird Hooker prays for judgment against Defendants Cheryl Facciani, Timothy Greenway, Brent Hudson, and Dr. Ken Nicely jointly and severally, consistent with these allegations, and requests that the Court award her general damages, compensatory damages, back pay, front pay, equitable relief, and punitive damages, together with pre-judgment interest from the date of termination, as

well as incidental and consequential costs associated herewith, including attorneys' fees and such other relief as a competent Court would deem appropriate.

### JURY TRIAL RESPECTFULLY REQUESTED ON ALL MATTERS UPON WHICH A TRIAL MAY BE REQUESTED.

Respectfully submitted,

**MARTHA KAY BAIRD HOOKER**

By: _____
Thomas E. Strelka, Esq. (VSB # 75488)
STRELKA EMPLOYMENT LAW

Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh Rhoads, Esq. (VSB # 73355)
Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB # 65766)
STRELKA EMPLOYMENT LAW
4227 Colonial Ave.
Roanoke, VA  24018
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
brittany@strelkalaw.com
monica@strelkalaw.com