UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| MARTHA KAY BAIRD HOOKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 7:23-cv-00750 |
| ) | |
| CHERYL FACCIANI, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants Cheryl Facciani, Timothy Greenway, Brent Hudson, and Dr. Kenneth Nicely (collectively, "Defendants"), by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, state as follows in support of their Motion to Dismiss.

**INTRODUCTION**

Plaintiff, Martha Kay Baird Hooker asserts a single cause of action pursuant to 42 U.S.C. § 1983 for First Amendment retaliation and "wrongful termination."[1]  Hooker, a member of the Roanoke County Board of Supervisors and a retired former teacher for the Roanoke County School Board, claims that she was terminated from her position as Work Based Learning Coordinator in retaliation for votes that she participated as a member of the Board of Supervisors.  Specifically, she alleges that in fall of 2022, she, along with the other members of the Board of Supervisors, voted to appropriate funds to the School Board "by categories and classification" rather than in a lump sum, as permitted by Va. Code § 22.1-115. Compl. ¶¶ 26–27.

---

[1] It does not appear that Hooker intends to assert "wrongful termination" as a separate claim but, rather, that her "wrongful termination" is the retaliation she claims she suffered in violation of the First Amendment.

1

Hooker alleges that this vote "angered the Defendants," Compl. ¶ 27, and that after this vote, Defendant Hudson, Chairman of the Roanoke County School Board, "personally telephoned Ms. Hooker, in her role as Chairman [of the Board of Supervisors], to complain about the votes." Compl. ¶ 31. Hooker also alleges that she engaged in "discourse with Defendants regarding her right to vote to distribute revenues into allocated funding." Compl. ¶ 33.

Hooker further alleges that she participated in a second unanimous vote, in spring of 2023, to approve funding to the School Board for a Career and Technical Education Center and for remodeling two elementary schools. Compl. ¶ 28. Hooker alleges that this was "historic funding for the schools" which the Board of Supervisors and School Board both approved. Compl. ¶ 29. Although Hooker makes the conclusory allegation that "[t]hese votes . . . angered Defendants," Compl. ¶ 31, she does not allege facts to explain how or why the spring of 2023 vote to provide "historic funding," which the "schools approved [] by resolution" could have "angered" the Defendants, nor does she specifically allege any facts to connect the spring of 2023 vote to approve the funding for the CTE Center and elementary school renovations to any alleged retaliation. See Compl., generally. Hooker also vaguely alleges that she ran for re-election in 2023 and that the Defendants supported her political opponent, Compl. ¶ 39, which *they* have a First Amendment right to do. But, again, Hooker fails to allege any facts to connect her reelection campaign to any alleged retaliation. See Compl. generally.

For the reasons set forth below, Hooker fails to allege facts sufficient to make out a claim of retaliation. Accordingly, her Complaint should be dismissed with prejudice.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible

on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). The mere possibility a plaintiff may have a cognizable claim is insufficient; well-pled allegations must nudge the claim "across the line from conceivable to plausible" to survive a motion to dismiss. Id. at 570. A "claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

While "[t]he court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take facts asserted therein as true," it does not need to "accept the legal conclusions, inferences, or arguments that are drawn from the facts." Kelley v. United States, 580 F. Supp. 2d 490, 492 (E.D. Va. 2008) (citation omitted). "Naked allegations" that consist of a "formulaic recitation of the necessary elements [] are no more than conclusions and therefore do not suffice." McCleary-Evans v. Maryland Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678–79) (internal quotation marks omitted).

## ARGUMENT

Hooker asserts her First Amendment retaliation claim, pursuant to 42 U.S.C. § 1983, against all four Defendants in both their official and individual capacities. See Compl. As an initial matter, Hooker's official capacity claims must be dismissed because she has failed to allege facts sufficient to state such a claim. Hooker's individual capacity claims must also be dismissed because she has failed to allege facts sufficient to state a claim and, additionally, the Defendants are entitled to qualified immunity.

I.   **The official capacity claims against the Defendants must be dismissed because Hooker has not alleged that any policy or custom of the School Board resulted in her termination.**

The United States Supreme Court distinguished individual capacity (also called personal capacity) suits from official capacity suits in Kentucky v. Graham, 473 U.S. 159, 165 (1985). As the Court explained:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent."

Id. (citing Scheuer v. Rhodes, 416 U.S. 232, 237–238 (1974); quoting Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 (1974)). Because an official capacity suit is "treated as a suit against the entity . . . [the entity] must then be a moving force behind the deprivation." King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016) (quoting Graham, 473 U.S. at 166) (internal quotation marks and citation omitted). Accordingly, "the entity's 'policy or custom' must have played a part in the violation of federal law." Id. Moreover, as Judge Urbanski recently observed, "to get past the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." Allen v. Good, No. 7:22-CV-00351, 2023 U.S. Dist. LEXIS 163382, at *16 (W.D. Va. Sep. 14, 2023) (quoting Henderson v. Harris Cnty., 51 F.4th 125, 130 (5th Cir. 2022).

There is no allegation in the Complaint that any policy or custom of the Roanoke County School Board played a part in Hooker's alleged termination. Indeed, Hooker concedes that the School Board took no action whatsoever with regard to her employment status. Compl. at ¶ 42. At most, Hooker alleges that "[p]olicy and practice dictate that Dr. Nicely makes personnel decisions such as terminations." Compl. ¶ 47. This allegation is insufficient to show that the

4

*School Board* adopted any policy and, regardless, also fails to demonstrate any connection to any violation of Hooker's constitutional rights.  Thus, Hooker has failed to allege any "specific facts" to connect any policy or custom of the School Board to the underlying constitutional violation. Allen, 2023 U.S. Dist. LEXIS 163382, at *16.  Accordingly, the official capacity claims against all four Defendants must be dismissed.

**II.     The individual capacity claims must also be dismissed.**

Hooker's claims against the Defendants in their individual capacities must also be dismissed.  As demonstrated below, Hooker has failed to allege facts sufficient to make out a claim for First Amendment retaliation against any of the Defendants.  Moreover, the Defendants are also entitled to qualified immunity.  Finally, the individual capacity claims must be dismissed as to Defendants Facciani, Greenway, and Hudson because there is no allegation that any of these Defendants took any action that caused the alleged constitutional deprivation.

**A.     Hooker has failed to allege facts sufficient to state a claim of retaliation under the First Amendment.**

To state a First Amendment retaliation claim under § 1983, a public employee, like Hooker, must allege three elements: (1) her expression was "as a citizen, not as an employee, on a matter of public concern";  (2) her "interest in the expression at issue outweighed the employer's interest in providing effective and efficient services to the public"; and (3) there was "a sufficient causal nexus" between the protected expression and the adverse employment action. Minnick v. County of Currituck, 521 F. App'x 255, 262–63 (4th Cir. 2013) (citing McVey v. Stacy, 157 F.3d 271, 277–78 (4th Cir. 1998)).  Hooker's First Amendment retaliation claim fails because she has not alleged any facts to support the second element.

5

The second element, also referred to as "Pickering balancing," requires a plaintiff to allege facts sufficient to show that her interest in the speech she identified[2] outweighs the school system's interest in providing "effective and efficient" services. McVey, 157 F.3d at 278. Factors the courts consider when engaging in this balancing test "include whether the employee's speech (1) 'impairs discipline by superiors'; (2) impairs 'harmony among co-workers'; (3) 'has a detrimental impact on close working relationships'; (4) impedes the performance of the public employee's duties; (5) interferes with the operation of the agency; (6) undermines the mission of the agency; (7) is communicated to the public or to co-workers in private; (8) conflicts with the 'responsibilities of the employee within the agency'; and (9) makes use of the 'authority and public accountability the employee's role entails.'" McVey, 157 F.3d at 278. Furthermore, a public employee who has a "public contact role and speaks out in a manner that interferes with or undermines the operation of the agency, its mission, or its public confidence, enjoys substantially less First Amendment protection than does a lower level employee." Id. "The more the employee's job requires public contact, the greater the state's interest in firing her for expression that offends her employer." Grutzmacher v. Howard Cnty., 851 F.3d 332, 346 (4th Cir. 2017) (citation omitted).

Hooker has not alleged that she was merely a rank and file employee but, rather that she worked within the Career and Technical Education (CTE) department as the Work-Based Learning Coordinator for Roanoke County Public Schools. Compl. ¶ 10–11. As such, her job duties included, among other things, attending monthly Work-Based Learning Collaboration meetings; joining the Association for Career and Technical Education's WBL (Work-Based Learning) Section group and attend meetings; collaborating with Virginia Department of

---

[2] For purposes of this motion only, the Defendants' argument assumes, arguendo, that at least some of Hooker's alleged speech was made as a citizen on a matter of public concern.

Education Work-Based Learning State Specialist; Coordinating an event that shows gratitude to RCPS's sponsor/partner companies; coordinating the Registered Apprenticeship Signing Day and Showcase; maintaining and developing positive relationships with business and industry; collaborating with the Virginia Department of Labor and Industry on Registered Apprenticeship work process; developing publicity information and handouts; and attending civic organization and chambers of commerce meetings to network and promote Work-Based Learning opportunities for RCPS students.  Compl. ¶ 11.  Thus, Hooker's role, based on her own allegations, involved substantial public contact.  Hooker was, in essence, the public face of Work-Based Learning for the CTE department of Roanoke County Public Schools.  Because of the high level of public contact required by her role, Hooker was entitled to substantially less First Amendment protection than other employees, and the school system had an even greater interest than usual in being able to terminate her employment.  McVey, 157 F.3d at 278; Grutzmacher, 851 F.3d at 346.

       Moreover, Hooker's speech at issue here included a vote to restrict funding to RCPS "by categories and classifications" that led to "growing frustrations between the two boards regarding funding for the new CTE center."  Compl. ¶¶ 25–26.  Put simply, Hooker's speech was in direct conflict with RCPS goals for the CTE department, where Hooker served in a very public-facing role.  At a minimum, such speech impaired discipline by her supervisor, the Director of CTE, because Hooker was in a position to negatively impact funding for the CTE department and important projects; it impaired harmony among co-workers whose jobs could be negatively impacted by funding restrictions; and it had a detrimental impact on close working relationships which Hooker's position required with other agencies and departments as well as with parents, students, and the local business community.  Hooker's speech also impeded the performance of

7

her duties which included expanding, not restricting, opportunities for students; it interfered with the operation of the CTE department (if not the entire school system); and it conflicted with Hooker's responsibilities within the CTE department and the school system.

On these alleged facts, the court cannot conclude that Hooker's interests in her speech outweighed the Defendants' interests in the efficient and effective operation of the school system. Accordingly, Hooker's First Amendment retaliation claim must be dismissed.

### B. The Defendants are also entitled to qualified immunity with respect to the individual capacity claims.

Qualified immunity protects government officials from liability for civil damages in a § 1983 action "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A government official is entitled to qualified immunity unless (1) the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right, and (2) the right violated was "clearly established" when the violation occurred. Henry v. Purnell, 501 F.3d 374, 376–77 (4th Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). There need not be "a case directly on point [for the right to be clearly established], but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd 563 U.S. 731, 735 (2011).

The Fourth Circuit has repeatedly acknowledged that "because of the 'sophisticated balancing' involved in First Amendment questions, only infrequently will it be clearly established that a public employee's speech on a matter of public concern is constitutionally protected." Cannon v. Vill. of Bald Head Island, 891 F.3d 489 (4th Cir. 2019); Stickley v. Sutherly, 416 F. App'x. 268, 272 (4th Cir. 2011) (same); Mills v. Steger, 64 F. App'x. 864, 874

8

(4th Cir. 2003) ("the individualized assessment required by the Pickering balancing test means we can rarely say that the law was clearly established and that reasonable officials would have been aware of the law").

For the same reasons stated above that Hooker's allegations fail to show that her interests outweigh the Defendants' interests, supra section II.A., it was not "clearly established" that Hooker's interests under the circumstances would outweigh the Defendants' interest in the effective and efficient provision of services. Accordingly, the Defendants are entitled to qualified immunity and the Complaint must be dismissed.

### C. The claims against Facciani, Greenway, and Hudson must also be dismissed for the additional reason that Hooker has failed to allege that they took any action against her.

Claims brought under § 1983 must allege personal involvement on the part of the defendant. Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017); Duncan v. Lee, No. 7:20-CV-00554, 2020 U.S. Dist. LEXIS 218458, at *2 (W.D. Va. Nov. 20, 2020) ("Liability under § 1983 is 'personal, based upon each defendant's own constitutional violations.'") (quoting Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)). Furthermore, a "plaintiff alleging First Amendment retaliation under § 1983 cannot simply make general allegations that a group of defendants violated his constitutional rights." Bhattacharya v. Murray, No. 3:19-CV-54, 2022 U.S. Dist. LEXIS 129588, at *12 (W.D. Va. Jul. 21, 2022). "Rather, he must 'affirmatively show[ ] that the [defendant] acted personally in the deprivation of plaintiff's rights.'" Id. (citing Roncales v. Cnty. of Henrico, 451 F. Supp. 3d 480, 500 (E.D. Va. 2020) (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)).

Hooker's Complaint is devoid of any allegation that Facciani, Greenway, or Hudson took any action to effectuate her alleged termination. See Compl., generally. While she alleges that these three Defendants were "determined to terminate Ms. Hooker's employment," she concedes

9

that there was no public meeting and no meeting of the School Board. Compl. ¶ 42. Without any meeting or vote, there was no action of the School Board, and nothing else in the Complaint suggests otherwise. Indeed, there are no actions whatsoever attributed to Facciani in the Complaint. With regard to Greenway, Hooker alleges only that he texted her a week after her termination, suggesting that they should speak. Compl. ¶ 52. With regard to Hudson, Hooker alleges only that he telephoned her "to complain about the votes," Compl. ¶ 31, and that he told her that the funding situation was "unacceptable and would be an ongoing roadblock to our relationship." Compl. ¶ 35. Noticeably absent, however, is any allegation that any of the three named School Board members actually did anything to cause Hooker's alleged termination. See Compl., generally. This omission is both telling and fatal to Hooker's claim. Accordingly, the Complaint must be dismissed as to Facciani, Greenway, and Hudson for this additional reason.

## CONCLUSION

For the reasons stated above, Hooker has failed to allege facts to state any plausible claim for relief. Defendants accordingly request that the Court dismiss her Complaint in its entirety, and award Defendants such further relief as the Court deems appropriate.

[Signature block on following page]

Respectfully Submitted,

Cheryl Facciani, Timothy Greenway, Brent Hudson, Dr. Kenneth Nicely

By Counsel

/s/  R. Matthew Black
Stacy L. Haney (VSB 71054)
R. Matthew Black (VSB 94663)
HANEY PHINYOWATTANACHIP PLLC
9201 Arboretum Pkwy, Suite 160
Richmond, VA 23236
Tel:	(804) 500-0310
Fax:	(804) 500-0309
shaney@haneyphinyo.com
mblack@haneyphinyo.com
*Counsel for Defendants Cheryl Facciani, Timonthy Greenway, Brent Hudson, and Dr. Kenneth Nicely*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of January, 2024, I have electronically filed the foregoing using the CM/ECF system, which will automatically send email notification of such filing to counsel of record as follows:

        Thomas E. Strelka (VSB 75488)
        L. Leigh Rhoads (VSB 73355)
        Brittany M. Haddox (VSB 86416)
        Monica L. Mroz (VSB 65766)
        STRELKA EMPLOYMENT LAW
        4227 Colonial Ave.
        Roanoke, VA 24018
        Tel:   (540) 283-0802
        thomas@strelkalaw.com
        leigh@strelkalaw.com
        brittany@strelkalaw.com
        monica@strelkalaw.com
        *Counsel for Martha Kay Baird Hooker*


        /s/  R. Matthew Black
        Stacy L. Haney (VSB 71054)
        R. Matthew Black (VSB 94663)
        HANEY PHINYOWATTANACHIP PLLC
        9201 Arboretum Pkwy, Suite 160
        Richmond, VA 23236
        Tel:   (804) 500-0310
        Fax:   (804) 500-0309
        shaney@haneyphinyo.com
        mblack@haneyphinyo.com
        *Counsel for Defendants Cheryl Facciani,*
        *Timonthy Greenway, Brent Hudson, and*
        *Dr. Kenneth Nicely*