IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARTHA KAY BAIRD HOOKER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHERYL FACCIANI, *in her individual* )<br>*and official capacity,* )<br>)<br>TIMOTHY GREENWAY, *in his individual* )<br>*and official capacity,* )<br>)<br>BRENT HUDSON, *in his individual* )<br>*and official capacity,* )<br>)<br>DR. KEN NICELY *in his individual* )<br>*and official capacity,* )<br>)<br>Defendants. ) | Case No.: 7:23-cv-00750 |

### AMENDED COMPLAINT

COMES NOW, Plaintiff Martha Kay Baird Hooker (hereinafter, "Plaintiff" or "Ms. Hooker") by counsel, and hereby presents this Amended Complaint against Defendants Cheryl Facciani, Timothy Greenway, Brent Hudson, and Ken Nicely all in their official capacities. This pleading is filed pursuant to Rule 15(a)(1)(B). In support thereof, Ms. Hooker provides as follows:

### STATEMENT OF FACTS

#### A. The Parties

1. Ms. Hooker is a lifelong educator. In May of 2021, she retired from a nineteen-year career spent teaching in Roanoke County Public Schools ("RCPS").

2. Ms. Hooker is also a civic leader. Specifically, she was the Glenvar Middle School PTA President from 1999 – 2001, and served on the Roanoke County Planning

Commission from 1992 – 2015.

3. In November 2015, Ms. Hooker was elected by voters in the Catawba District to represent them on the Roanoke County Board of Supervisors ("BOS"). Ms. Hooker began serving in January 2016, and currently serves as Chairwoman of the BOS.

4. Defendant Cheryl Facciani is a Board Member of RCPS.

5. Defendant Timothy Greenway is a Board Member of RCPS.

6. Defendant Brent Hudson, Chairman, is a Board Member of RCPS.

7. Defendant Dr. Ken Nicely is the Superintendent of RCPS and is responsible for RCPS employment decisions such as terminations.

8. All the parties to this action are domiciled in Roanoke, County, Virginia.

**B. Employment with RCPS: Work Based Learning Coordinator**

9. At all times pertinent to this Amended Complaint, Ms. Hooker was an employee of RCPS.

10. When Ms. Hooker began a period of retirement from teaching in May of 2021, Jason Suhr, Director of Career and Technical Education ("CTE"), approached her with an opportunity to continue working for RCPS, and Ms. Hooker was hired as the Work Based Learning Coordinator. Because Ms. Hooker had been a marketing and business teacher, working with Jason Suhr in the CTE department was a natural fit for her.

11. Ms. Hooker excelled at her job. She received praise from coworkers, students, and her supervisor, Mr. Suhr, CTE Director.

12. Whenever Ms. Hooker received a written work performance evaluation, she met and/or exceeded expectations.

13. At no time in the history of her employment with RCPS, has Ms. Hooker ever received workplace discipline or a performance improvement plan.

14. Throughout her employment, Ms. Hooker was consistently requested to work more hours because of her positive performance and reception. Mr. Suhr requested on March 10, 2023 that Ms. Hooker continue to work beyond her VRS contract through the 2023-2024 school year and Ms. Hooker accepted the verbal agreement.

15. After her acceptance, Mr. Suhr sent Ms. Hooker this email:

> **From:** Jason Suhr
> **Sent:** Monday, March 13, 2023 7:50 AM
> **To:** Martha Hooker
> **Subject:** RE: next year
>
> Good Morning Martha,
>
> I appreciate you taking time to mull this option for next year and for the quicker-than-anticipated response. This is great news! I spoke with Jim Bradshaw and he said we can do away with the time sheet (after your EWPP days are done). Let's put out our heads together in the next couple weeks to iron out the amount of time you are comfortable committing to.
>
> Thanks again Martha.
>
> Jason
>
> Jason Suhr
>
> Director, Career & Technical Education

### C. Ms. Hooker, BOS Member

16. Roanoke County is governed by a County Board form of government, and the Board of Supervisors is "the policy-determining body of the county." Va. Code § 15.2-403. Ms. Hooker has represented the Catawba District since January 2016.

17. As a member of the BOS, Ms. Hooker has a statutory right and duty to vote on ordinances and resolutions before the BOS. Va. Code § 15.2-1472, -1428.

18. At all times pertinent to this matter, RCPS and its officials were aware that Ms. Hooker served on the BOS.

19. As an RCPS employee, Hooker was subject to the State & Local Government Conflict of Interests Act. RCPS Policy 5.25(A). The Act does not prohibit or condition in any way an employee's participation in a county elected office. RCPS Policy 5.25(B),(C).

20. Out of an abundance of caution, however, Ms. Hooker requested legal opinions from the Roanoke County Attorney's Office, on multiple occasions, to ensure that no conflict of interest existed and to avoid any appearance of impropriety.

21. Ms. Hooker received information from Roanoke County that no such conflict of interest existed, and she made a practice of disclosing her employment with RCPS when voting on school issues.

22. For example, in 2016, Roanoke County's Office of the Attorney wrote the following in response to Ms. Hooker's request for a legal opinion.

> This is an official opinion letter which I have drafted specifically upon your request. Previously, you spoke with the prior County Attorney, Paul M. Mahoney, regarding any potential conflict of interest that could arise from your running for the position on the Board of Supervisors while continuing your long time employment with the Roanoke County School Board. At that time, I was employed here as a Senior Assistant County Attorney, was aware of those conversations, and understood Mr. Mahoney's opinion to be that no conflict existed in your running for office. I will outline the reasoning herein, in which I personally concur.

23. At no time during the entirety of her employment were any concerns expressed or any appearance of impropriety or conflict of interest ever noted regarding Ms. Hooker's role with the BOS and her employment with RCPS.

24. At no time, until she was terminated in 2023, did any employee of RCPS ever state to Ms. Hooker that a conflict of interest had developed regarding Ms. Hooker's role with the BOS and her employment with RCPS as the Work-Based Learning Coordinator.

**D. BOS approves RCPS funding**

25. As the governing body of Roanoke County, the BOS makes appropriations to RCPS "from the funds derived from local levies and from any other funds available, for operation, capital outlay and debt service in the public schools." Va. Code § 22.1-94.

26. State law permits the BOS to appropriate the funds in one lump sum ("total only") or in "such major classifications prescribed by the Board of Education." Va. Code § 22.1-94.

27. The "major classifications" are the same as the required accounting categories for school expenditures established by the State Board of Education. They include (i) instruction, (ii) administration, attendance and health, (iii) pupil transportation, (iv) operation and maintenance, (v) school food services and other noninstructional operations, (vi) facilities, (vii) debt and fund transfers, (viii) technology, and (ix) contingency reserves. Va. Code § 22.1-115.

28. In the Fall of 2022, the BOS discussed the funding appropriation to RCPS for FY 23-24.

29. Because the decision involved an appropriation, it could be passed only by "a recorded roll call affirmative vote of a majority of all members elected to the board." Roanoke County Code Sec. 2-123(e); Va. Code § 15.2-1428.

30. The BOS voted unanimously to appropriate funds to RCPS by "major classifications," rather than one lump sum, as had been done in prior years. The BOS voted unanimously on this proposal to increase transparency and accountability.

31. As required by state law, Ms. Hooker's vote, along with those of her fellow BOS members, was recorded, and Defendants were aware of Ms. Hooker's vote. See Va. Code §§ 15.2-1427, -1428.

32. Her BOS vote was an expression of her own first amendment rights, and indeed, her statutory right and duty as a member of the BOS.

### E. Defendants were displeased that Ms. Hooker did not vote in accordance with their preference.

33. Ms. Hooker's vote to appropriate RCPS funding in accounting categories established by the State Board of Education did not impact any job duty, project, assignment, or goal related to her employment.

34. RCPS funding and the method or timing of such payments is a clear matter of public concern, and within the scope of the governmental responsibility of the Board of Supervisors. See Va. Code § 22.1-94.

35. After this vote in 2022, Defendants Hudson, Greenway, and Facciani, ("the School Board Defendants") openly expressed dissatisfaction with the BOS decision in public statements throughout the winter and spring of 2023, directing their ire against Ms. Hooker, specifically, because she was an RCPS employee.

36. During the Spring 2023 school semester, Defendant Hudson telephoned Ms. Hooker, then BOS Chairman, to complain about her vote. During these calls, Mr. Hudson spoke to Ms. Hooker in a derogatory tone and hostile demeanor.

37. Mr. Hudson informed Ms. Hooker in multiple phone calls that her vote to appropriate RCPS funding by categories was "unacceptable," intimating that the only "acceptable" vote for Ms. Hooker would have been to appropriate RCPS funding in a lump sum, as the School Board Defendants desired.

38. Because she was an RCPS employee, the School Board Defendants believed she should have voted in line with what *they* believed to be RCPS' interest.

6

39. As a member of the BOS, however, it is Ms. Hooker's job to make decisions in the best interest of the County and her Catawba constituents—not to represent her employer.

F. **Defendants try multiple tactics to remove Ms. Hooker**

40. Ms. Hooker publicly announced on January 28, 2023, that she intended to run for reelection.

41. The School Board Defendants first attempted to remove Ms. Hooker from the BOS through the political process.

42. On or about March 28, 2023, Thomas McCracken stated to the Republican Chairwoman that he would challenge Ms. Hooker for the Republican nomination for the Catawba seat on the BOS. McCracken claimed the support of three RCPS board members. When McCracken made his formal announcement at Glen Cove Elementary School on or about April 10, 2023, the school board Defendants Hudson and Facciani were present, and photographed attending and listening to Ms. Hooker's challenger.

43. While the School Board Defendants may certainly support the candidate of their choice, Defendants Facciani, Hudson, and Greenway chose to skip a joint signing ceremony between the BOS and RCPS on April 25, 2023 celebrating historic $130 million funding for RCPS building and renovation projects, to make a political statement against Ms. Hooker in their capacity as a majority of the school board members - - in an unadvertised meeting - - and participated in a photo opportunity with her challenger.

G. **School Board Defendants initiate a wrongful termination**

44. When it became clear that Ms. Hooker had a sizeable advantage over Mr. McCracken and that she would almost certainly defeat him in the June 20 primary, the

7

School Board Defendants determined to use the advantage of their position as Ms. Hooker's employer to retaliate unlawfully against Ms. Hooker for her BOS vote.

45. Contrary to the State & Local Gov. Conflict of Interests Act and the direct opinion of the attorney for Roanoke County, the School Board Defendants decided to advise Dr. Nicely, RCPS Superintendent, that Hooker's continued employment with RCPS presented a "conflict of interest" and to recommend her termination.

46. As Superintendent, Dr. Nicely is the highest- ranking executive employee of RCPS. Policy and practice dictate that Dr. Nicely makes personnel decisions such as terminations. The superintendent has primary responsibility for hiring/firing.

47. RCPS School Board's list of responsibilities does not reference personnel matters. RCPS Policy 2.11. Indeed, the only position over which the RCPS School Board has employer-like authority is the superintendent. The School Board appoints the superintendent and "each board member is involved in assessing the superintendent's job performance on a continuing basis." RCPS Policy 3.03, 3.05.

48. For all other positions, the School Board's role in personnel matters is effectively advisory: "The Board, both individually and collectively, will promptly advise the superintendent of all significant criticisms, complaints, and suggestions concerning the Roanoke County Public Schools or its employees for study, review and recommendation." School Board Bylaws, Art. I.

49. The act of advising on personnel matters is within the scope of the School Board's business.

50. According to RCPS School Board Bylaws, the School Board must "transact[] all business at School Board meetings." School Board Bylaws, Art. VIII(A). The School Board

8

Defendants did not propose or provide an advisory opinion on Ms. Hooker's employment in a regular School Board meeting.

51. The School Board Defendants did not call a Special Meeting for the purpose of providing an advisory opinion on Ms. Hooker's employment. They made no attempt to meet with the other two members of the School Board, which they must, to transact School Board business outside of a regular meeting. See School Board Bylaws, Art. IX.

52. Instead, the School Board Defendants communicated separately, and without the knowledge of the full School Board, to Dr. Nicely, their desire that Ms. Hooker's employment be terminated.

53. Upon information and belief, Dr. Nicely tasked Jason Suhr, Ms. Hooker's supervisor, with communicating to Ms. Hooker, the decision to terminate her employment.

54. On May 30, 2023, when Ms. Hooker arrived for a pre-arranged meeting with Suhr at 1pm to discuss RCPS' prior offer of continued employment as the CTE Work Based Learning Coordinator, Suhr reluctantly told Hooker that the RCPS School Board had made the decision to terminate her employment effective immediately, even though Ms. Hooker "had done a good job."

55. Immediately following the meeting, Ms. Hooker phoned David Linden, a member of the RCPS School Board, to inquire about the circumstances of her termination, but Linden was unaware of it. Shortly thereafter, Linden called another School Board member, Mike Wray, who also had no knowledge of the decision.

56. Around 5pm that same afternoon, Ms. Hooker arranged to meet with Dr. Nicely to discuss her termination. Dr. Nicely told Ms. Hooker that a "conflict of interest" was the cited reason for her termination.

57. Ms. Hooker explained that had she had repeatedly been cleared of any known or potential conflict of interest and had a letter from the County Attorney that declared as much, and she had never been advised that such a conflict existed.

58. Ms. Hooker also asked Dr. Nicely if she had done anything wrong. Dr. Nicely assured Ms. Hooker that she did a good job and that he had seen her "in action," and her performance was good.

59. Ms. Hooker questioned why she should be fired if she was doing a great job and why Dr. Nicely approved of the termination. Dr. Nicely stated that he believed, "the School Board does not want you working [for RCPS] and being a member of the BOS at the same time."

60. By 2023, Ms. Hooker had simultaneously worked for RCPS and been a member of the BOS for seven years.

61. Dr. Nicely emphasized that the decision to terminate Ms. Hooker was made by a majority of the RCPS School Board and not himself. "I was not willing to die on that hill," he stated to Ms. Hooker. Ms. Hooker questioned Dr. Nicely regarding the School Board's involvement in a personnel decision, and he said, "Sometimes the School Board gets out of their lane."

62. Dr. Nicely, either at the time that he terminated Ms. Hooker, or shortly thereafter, was aware that the decision to terminate Ms. Hooker, came not from the School Board, but from the three individual School Board Defendants acting in retaliation for Ms. Hooker's failure to vote on the BOS in accordance with their preference.

63. Knowing of the unauthorized nature of the directive to terminate Ms. Hooker, Dr. Nicely acquiesced to the demand and did nothing to overrule or rescind the decision.

64. No legitimate reason justified the termination of Ms. Hooker.

65. Ms. Hooker was terminated due to politically minded retaliation in violation of the 1st Amendment of the United States Constitution.

66. Ms. Hooker was terminated because she did not cast her vote as a BOS member in accordance with the wishes of her employer.

67. Ms. Hooker has suffered pecuniary and non-pecuniary losses, emotional distress, and reputational harm due to the acts and omissions of Defendants.

**COUNT I: FIRST AMENDMENT FREEDOM OF EXPRESSION
RETALIATION AND WRONGFUL TERMINATION
IN VIOLATION OF 42 U.S.C § 1983**

68. Ms. Hooker incorporates by reference herein the preceding paragraphs of this Complaint.

69. Ms. Hooker engaged in constitutionally protected political and legislative speech when she voted as an elected member of the BOS.

70. Ms. Hooker did not have a personal interest in exercising her freedom of speech. She expressed her opinions as a citizen, as a public servant, and as a member of the BOS.

71. Ms. Hooker's vote on the unanimous decision appropriating RCPS funding did not impair discipline by her superiors, cause disharmony among co-workers, or have a detrimental impact on close working relationships.

72. Ms. Hooker's vote did not impede or conflict with the performance of her duties or interfere with the operation of or undermine the mission of RCPS.

73. When Ms. Hooker voted in line with the rest of the BOS, she was not using her position as an RCPS employee.

74. In fact, Ms. Hooker's vote, one of five identical votes, had absolutely no effect on the mission, administration, or performance of RCPS.

75. According to the Defendants, Ms. Hooker's vote presented a "conflict of interest"

11

because they disagreed with her vote.

76. Defendants terminated Ms. Hooker because she voted on an issue before the BOS as a member of the BOS and did not use her position to advance Defendants' preferred outcome.

77. Defendants violated Ms. Hooker's First Amendment rights and retaliated against her in violation of 42 U.S.C. § 1983, when they terminated her because of her constitutionally protected political and legislative speech.

78. Defendants' termination of a public employee for voting as an elected official violates clearly established statutory and constitutional rights, as School Board members and administrative officials, well acquainted with the applicable laws, policies, and responsibilities of county government, would have known.

79. Defendants acted with reckless and/or callous indifference to Ms. Hooker's legal rights when they terminated Ms. Hooker because of her vote.

## COUNT II: BOWMAN, TYPE 1 CLAIM FOR WRONGFUL TERMINATION

80. Ms. Hooker incorporates by reference herein the preceding paragraphs of this Complaint.

81. By declaring Ms. Hooker's "unacceptable" vote a "conflict of interest," for which Hooker should be terminated, the Defendants terminated Hooker because she did not vote in the manner they preferred—or because she voted at all.

82. Hooker's seat on the BOS provides her a statutory right to cast a vote on matters before the board, particularly appropriations: "No ordinance or resolution appropriating money exceeding the sum of $500, . . . shall be passed except by a recorded affirmative vote of a majority of all members elected to the [BOS]." Va. Code § 15.2-1428. See also Roanoke County Code Sec. 2-123(e).

83. In order to realize this statutory right and to perform her public duty, Hooker had to be permitted to cast her vote in what she believed to be the best interest of her Catawba constituents and Roanoke County as a whole, free from retaliation by individuals representing her employer.

84. The Defendants' retaliatory termination of Hooker's employment was a wrongful discharge, violating a policy enabling the exercise of Hooker's statutorily created right to cast a vote as a member of the BOS.

WHEREFORE, Plaintiff Martha Kay Baird Hooker prays for judgment against Defendants Cheryl Facciani, Timothy Greenway, Brent Hudson, and Dr. Ken Nicely jointly and severally, consistent with these allegations, and requests that the Court award her general damages, compensatory damages, back pay, front pay, equitable relief, and punitive damages, together with pre-judgment interest from the date of termination, as well as incidental and consequential costs associated herewith, including attorneys' fees and such other relief as a competent Court would deem appropriate.

**JURY TRIAL RESPECTFULLY REQUESTED ON ALL MATTERS UPON WHICH A TRIAL MAY BE REQUESTED.**

Respectfully submitted,

**MARTHA KAY BAIRD HOOKER**

By: _____
Thomas E. Strelka, Esq. (VSB # 75488)
STRELKA EMPLOYMENT LAW

Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh Rhoads, Esq. (VSB # 73355)

13

Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB # 65766)
STRELKA EMPLOYMENT LAW
4227 Colonial Ave.
Roanoke, VA  24018
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
brittany@strelkalaw.com
monica@strelkalaw.com

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on February 14, 2024, I filed this document on the Court's CM/ECF filing system which sent a notice of electronic filing to Stacy L. Haney, Esquire, and R. Matthew Black, Esquire, Haney Phinyowattanachip, PLLC, 9201 Arboretum Pkwy, Suite 160, Richmond, VA 23236.

By  /s/ *Thomas E. Strelka*
Thomas E. Strelka, Esq. (VSB # 75488)
STRELKA EMPLOYMENT LAW
*Counsel for Plaintiff*