## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Roanoke Division

| | | |
|---|---|---|
| MARTHA KAY BAIRD HOOKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:23-cv-00750 |
| | ) | |
| CHERYL FACCIANI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT
### OF MOTION TO DISMISS AMENDED COMPLAINT

Defendants Cheryl Facciani, Timothy Greenway, Brent Hudson, and Dr. Kenneth Nicely (collectively, "Defendants"), by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, state as follows in support of their Motion to Dismiss Plaintiff's Amended Complaint ("Am. Compl.").

### INTRODUCTION

In her Amended Complaint, Plaintiff Martha Kay Baird Hooker asserts a claim pursuant to 42 U.S.C. § 1983 for First Amendment retaliation (Count I) as well as a separate claim under Virginia common law for wrongful termination in violation of public policy (Count II).  Hooker, a member of the Roanoke County Board of Supervisors and a retired former teacher for the Roanoke County School Board, claims that she was terminated from her position as Work Based Learning Coordinator in retaliation for a single vote that she cast as a member of the Board of Supervisors.  Specifically, she alleges that in fall of 2022, she, along with the other members of the Board of Supervisors, voted to appropriate funds to the School Board by major classification rather than in a lump sum, as permitted by Va. Code § 22.1-94.  Am. Compl. ¶¶ 25–30.  Hooker

1

alleges that Defendants Hudson, Greenway, and Facciani "openly expressed dissatisfaction with the BOS decision," that they "direct[ed] their ire against Ms. Hooker," Am. Compl. ¶ 35, and that after this vote, Defendant Hudson, Chairman of the Roanoke County School Board, "telephoned Ms. Hooker, then BOS Chairman, to complain about her vote." Am. Compl. ¶ 36. Hooker alleges that Hudson indicated that her vote was "unacceptable" and that "the only 'acceptable' vote for Ms. Hooker would have been to appropriate RCPS funding in a lump sum." Am. Compl. ¶ 37.

Hooker also alleges that when she ran for re-election in 2023, Hudson, Greenway and Facciani supported her political opponent, Thomas McCracken, and that they skipped "a joint signing ceremony between the BOS and RCPS on April 25, 2023 celebrating historic $130 million funding for RCPS building and renovation projects, to make a political statement against Ms. Hooker," Am. Compl. ¶¶ 40–43, which _they_ have a First Amendment right to do.[1]

Hooker alleges that after it became clear she would defeat McCracken, Hudson, Greenway, and Facciani "decided to advise Dr. Nicely, RCPS Superintendent, that Hooker's continued employment with RCPS presented a 'conflict of interest' and to recommend her termination," but that "[p]olicy and practice dictate that Dr. Nicely makes personnel decisions such as terminations" Am. Compl. ¶¶ 45–46. Hooker further alleges that "the School Board's role in personnel matters is effectively advisory." Am. Compl. ¶ 48. Hooker alleges that there was no meeting of the School Board at which her employment was discussed or acted upon but, rather, that Hudson, Greenway, and Facciani "communicated separately, and without the

---

[1] Hooker also insinuates that appearing at a photo opportunity with her political opponent constitutes an "unadvertised meeting" that is somehow unlawful or otherwise inappropriate. Am. Compl. ¶ 43. Despite Hooker's baseless assertions to the contrary, appearing for a photo opportunity with a candidate for the Board of Supervisors is not the transaction of public business such that advertising a meeting is required. See Va. Code § 2.2-2700.

knowledge of the full School Board, to Dr. Nicely, their desire that Ms. Hooker's employment be terminated." Am. Compl. ¶¶ 50–52. Nicely, in turn "tasked Jason Suhr, Ms. Hooker's supervisor, with communicating to Ms. Hooker, the decision to terminate her employment." Am. Compl. ¶ 53. Despite the fact that there was never any School Board meeting and, therefore, no action ever taken by the School Board, Am. Compl. ¶¶ 50–52, "Suhr reluctantly told Hooker that the RCPS School Board has made the decision to terminate her employment effective immediately." Am. Compl. ¶ 54. Later the same day, "Dr. Nicely told Ms. Hooker that a 'conflict of interest' was the cited reason for her termination." Am. Compl. ¶ 56.

For the reasons set forth below, Hooker fails to allege facts sufficient to make out a claim of retaliation or wrongful discharge against any of the four Defendants. Accordingly, her Amended Complaint should be dismissed with prejudice.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). The mere possibility a plaintiff may have a cognizable claim is insufficient; well-pled allegations must nudge the claim "across the line from conceivable to plausible" to survive a motion to dismiss. Id. at 570. A "claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

While "[t]he court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take facts asserted therein as true," it does not need to "accept the legal conclusions, inferences, or arguments that are drawn from the facts." Kelley v. United

States, 580 F. Supp. 2d 490, 492 (E.D. Va. 2008) (citation omitted).  "Naked allegations" that

consist of a "formulaic recitation of the necessary elements [] are no more than conclusions and

therefore do not suffice."  McCleary-Evans v. Maryland Dep't of Transp., 780 F.3d 582, 585

(4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678–79) (internal quotation marks omitted).

## ARGUMENT

Hooker has sued all four Defendants in both their official and individual capacities.  See

Am. Compl.  As an initial matter, Hooker's official capacity claims must be dismissed because

she has failed to allege that any policy or custom of the School Board resulted in her termination.

In addition, Count I should be dismissed because Hooker has failed to allege facts sufficient to

state a claim of First Amendment retaliation against any of the four Defendants and, additionally,

all four Defendants are entitled to qualified immunity.  Likewise, Count II should be dismissed

because Hooker has failed to allege facts to state a claim for wrongful termination under state

law.

**I.     The official capacity claims against the Defendants must be dismissed because Hooker has not alleged that any policy or custom of the School Board resulted in her termination.**

The United States Supreme Court distinguished individual capacity (also called personal

capacity) suits from official capacity suits in Kentucky v. Graham, 473 U.S. 159, 165 (1985).  As

the Court explained:

> Personal-capacity suits seek to impose personal liability upon a government official
> for actions he takes under color of state law. Official-capacity suits, in contrast,
> "generally represent only another way of pleading an action against an entity of
> which an officer is an agent."

Id. (citing Scheuer v. Rhodes, 416 U.S. 232, 237–238 (1974)); quoting Monell v. New York City

Dep't of Social Servs., 436 U.S. 658, 690 (1974)).  Because an official capacity suit is "treated as

a suit against the entity . . . [the entity] must then be a moving force behind the deprivation."

4

King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016) (quoting Graham, 473 U.S. at 166) (internal quotation marks and citation omitted).  Accordingly, "the entity's 'policy or custom' must have played a part in the violation of federal law." Id.  Moreover, as Judge Urbanski recently observed, "to get past the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts."  Allen v. Good, No. 7:22-CV-00351, 2023 U.S. Dist. LEXIS 163382, at *16 (W.D. Va. Sep. 14, 2023) (quoting Henderson v. Harris Cnty., 51 F.4th 125, 130 (5th Cir. 2022).

There is no allegation in the Amended Complaint that any policy or custom of the Roanoke County School Board played a part in Hooker's alleged termination.  Indeed, Hooker concedes that the School Board took no action whatsoever with regard to her employment status. Am. Compl. at ¶¶ 50-52.  At most, Hooker alleges that "[p]olicy and practice dictate that Dr. Nicely makes personnel decisions such as terminations." Am. Compl. ¶ 46.  This allegation is insufficient to show that the *School Board* adopted any policy and, regardless, also fails to demonstrate any connection to any violation of Hooker's constitutional rights.  Thus, Hooker has failed to allege any "specific facts" to connect any policy or custom of the School Board to the underlying constitutional violation.  Allen, 2023 U.S. Dist. LEXIS 163382, at *16.  Accordingly, the official capacity claims against all four Defendants must be dismissed.

## II.     Hooker's First Amendment retaliation claim (Count I) must be dismissed.

Hooker's First Amendment claims against the Defendants pursuant to § 1983 must be dismissed.  As demonstrated below, Hooker has failed to allege facts sufficient to make out a claim for First Amendment retaliation against any of the Defendants, and the Defendants are also entitled to qualified immunity on that claim.  Moreover, the First Amendment claims asserted

against Defendants Facciani, Greenway, and Hudson in their individual capacities must also be dismissed because there is no allegation that any of these Defendants took any action that caused the alleged constitutional deprivation.

### A.   Hooker has failed to allege facts sufficient to state a claim of retaliation under the First Amendment.

To state a First Amendment retaliation claim under § 1983, a public employee, like Hooker, must allege three elements: (1) her expression was "as a citizen, not as an employee, on a matter of public concern";  (2) her "interest in the expression at issue outweighed the employer's interest in providing effective and efficient services to the public"; and (3) there was "a sufficient causal nexus" between the protected expression and the adverse employment action. Minnick v. County of Currituck, 521 F. App'x 255, 262–63 (4th Cir. 2013) (citing McVey v. Stacy, 157 F.3d 271, 277–78 (4th Cir. 1998)).  Hooker's First Amendment retaliation claim fails because she has not alleged any facts to support the second element.

The second element, also referred to as "Pickering balancing," requires a plaintiff to allege facts sufficient to show that her interest in the speech she identified outweighs the school system's interest in providing "effective and efficient" services.  McVey, 157 F.3d at 278. Factors the courts consider when engaging in this balancing test "include whether the employee's speech (1) 'impairs discipline by superiors'; (2) impairs 'harmony among co-workers'; (3) 'has a detrimental impact on close working relationships'; (4) impedes the performance of the public employee's duties; (5) interferes with the operation of the agency; (6) undermines the mission of the agency; (7) is communicated to the public or to co-workers in private; (8) conflicts with the 'responsibilities of the employee within the agency'; and (9) makes use of the 'authority and public accountability the employee's role entails.'"  McVey, 157 F.3d at 278.

While Hooker makes the <u>conclusory</u> allegations that her speech "did not impair discipline by her superiors, cause disharmony among co-workers, or have a detrimental impact on close working relationships," Am. Compl. ¶ 71, or "impede or conflict with the performance of her duties or interfere with the operation or undermine the mission of RCPS," Am. Compl. ¶ 72, the <u>facts</u> alleged actually demonstrate the opposite. <u>See</u> <u>Supinger v. Virginia</u>, 167 F. Supp. 3d 795, 810 (W.D. Va. 2016) ("It is well established that 'courts are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting <u>Twombly</u>, 550 U.S. at 555); <u>Hinton v. Virginia Union Univ.</u>, 185 F. Supp. 3d 807, 814 (E.D. Va. 2016) ("Nor is the court required to accept as true a legal conclusion unsupported by factual allegations.") (citing <u>Iqbal</u>, 556 U.S. at 678–79).

Hooker has not alleged that she was merely a rank and file employee but, rather that she worked within the Career and Technical Education (CTE) department as the Work-Based Learning Coordinator for Roanoke County Public Schools directly under the supervision of the CTE Director, Jason Shur.  Am. Compl. ¶ 10–11.  Moreover, Hooker's speech at issue here was her vote to restrict funding to RCPS "by major classification" that led to "dissatisfaction [by School Board members] with the BOS," Am. Compl. ¶ 34, because the School Board members wanted the BOS to "appropriate RCPS funding in a lump sum," Am. Compl. ¶ 37.  Put simply, Hooker's vote was in direct conflict with RCPS's funding goals for the school division as well as for the CTE department, where Hooker served as Work Based Learning Coordinator.  At a minimum, such speech impaired discipline by her supervisor, the Director of CTE, because Hooker was in a position to negatively impact funding not only for the CTE department but for the entire school division; it impaired harmony among co-workers whose jobs could be

negatively impacted by funding restrictions.[2]  Hooker's speech also impeded the performance of

her duties and interfered with the operation of the CTE department (if not the entire school

system); and it conflicted with Hooker's responsibilities within the CTE department and the

school system.

On these alleged facts, the court cannot conclude that Hooker's interests in her speech

outweighed the Defendants' interests in the efficient and effective operation of the school system.

Accordingly, Hooker's First Amendment retaliation claim must be dismissed.

### B.   The Defendants are also entitled to qualified immunity with respect to Hooker's First Amendment claims.

Qualified immunity protects government officials from liability for civil damages in a

§ 1983 action "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555

U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  A government

official is entitled to qualified immunity unless (1) the facts, when viewed in the light most

favorable to the plaintiff, show that the official's conduct violated a constitutional right, and (2)

the right violated was "clearly established" when the violation occurred. Henry v. Purnell, 501

F.3d 374, 376–77 (4th Cir. 2007) (quoting Harlow, 457 U.S. at 818).  There need not be "a case

directly on point [for the right to be clearly established], but existing precedent must have placed

the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd 563 U.S. 731, 735

(2011).

---

[2] Importantly, other than her conclusory assertion that her speech did not impact coworkers or relationships, Hooker makes no factual allegations whatsoever about her coworkers or her relationships with them or others.  Nor does she allege a single fact that would demonstrate how significant funding restrictions—which represented a reversal from longstanding practice, Am. Compl. ¶ 30—could possibly <u>not</u> impact school division operations.

The Fourth Circuit has repeatedly acknowledged that "because of the 'sophisticated balancing' involved in First Amendment questions, only infrequently will it be clearly established that a public employee's speech on a matter of public concern is constitutionally protected."  Cannon v. Vill. of Bald Head Island, 891 F.3d 489 (4th Cir. 2019); Stickley v. Sutherly, 416 F. App'x. 268, 272 (4th Cir. 2011) (same); Mills v. Steger, 64 F. App'x. 864, 874 (4th Cir. 2003) ("the individualized assessment required by the Pickering balancing test means we can rarely say that the law was clearly established and that reasonable officials would have been aware of the law").

For the same reasons stated above that Hooker's allegations fail to show that her interests outweigh the Defendants' interests, supra section II.A., it was not "clearly established" that Hooker's interests under the circumstances would outweigh the Defendants' interest in the effective and efficient provision of services.  Accordingly, the Defendants are entitled to qualified immunity and the Complaint must be dismissed.

**C.    The First Amendment claim against Facciani, Greenway, and Hudson must also be dismissed for the additional reason that Hooker has failed to allege that they took any action against her.**

Claims brought under § 1983 must allege personal involvement on the part of the defendant. Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017); Duncan v. Lee, No. 7:20-CV-00554, 2020 U.S. Dist. LEXIS 218458, at *2 (W.D. Va. Nov. 20, 2020) ("Liability under § 1983 is 'personal, based upon each defendant's own constitutional violations.'") (quoting Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)).  Furthermore, a "plaintiff alleging First Amendment retaliation under § 1983 cannot simply make general allegations that a group of defendants violated his constitutional rights."  Bhattacharya v. Murray, No. 3:19-CV-54, 2022 U.S. Dist. LEXIS 129588, at *12 (W.D. Va. Jul. 21, 2022).  "Rather, he must 'affirmatively show[ ] that the [defendant] acted personally in the deprivation of plaintiff's rights.'"  Id. (citing Roncales v.

Cnty. of Henrico, 451 F. Supp. 3d 480, 500 (E.D. Va. 2020) (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)).

Hooker's Complaint is devoid of any allegation that Facciani, Greenway, or Hudson took any action to effectuate her alleged termination.  See Am. Compl., generally.  While she alleges that these three Defendants were "communicated separately …their desire that Ms. Hooker's employment be terminated," Am. Compl. ¶52, she concedes that there was no public meeting and no meeting of the School Board.  Am. Compl. ¶¶ 50-51.  Without any meeting or vote, there was no action of the School Board, and nothing else in the Amended Complaint suggests otherwise.

Indeed, the only actions attributed to Facciani in the Amended Complaint are that she "expressed dissatisfaction the BOS decision," Am. Compl. ¶ 35, that she attended McCracken's formal announcement and was photographed with him, Am. Compl. ¶ 42, and that she skipped a joint signing ceremony with the Board of Supervisors to do so, Am. Compl. ¶ 43.  With regard to Greenway, Hooker alleges only that he also "expressed dissatisfaction with the BOS decision" and skipped the joint signing ceremony with the BOS.  Am. Compl. ¶¶ 35, 43.  With regard to Hudson, in addition to "expressing dissatisfaction with the BOS decision, " attending her opponent's event and skipping the joint signing ceremony, Am. Compl. ¶¶ 35, 42–43, Hooker alleges only that Hudson telephoned her "to complain about her vote," Am. Compl. ¶ 35, and that he told her that the funding situation was "unacceptable" Am. Compl. ¶ 37.  Noticeably absent, however, is any allegation that any of the three named School Board members actually did anything to cause Hooker's alleged termination.  See Am. Compl., generally.  This omission is both telling and fatal to Hooker's claim.  Accordingly, the Complaint must be dismissed as to Facciani, Greenway, and Hudson for this additional reason.

### III.    Hooker's claim for wrongful termination under Bowman (Count II) must be dismissed.

10

In <u>Bowman v. State Bank of Keysville</u>, 229 Va. 534 (1985), the Supreme Court of Virginia recognized an exception to the doctrine of employment at-will when an employer discharges an employee in violation of public policy.  The Virginia Supreme Court has, however, consistently characterized the <u>Bowman</u> exception as "narrow."  <u>City of Va. Beach v. Harris</u>, 259 Va. 220, 232 (Va. 2000) (quoting <u>Lawrence Chrysler Plymouth Corp. v. Brooks</u>, 251 Va. 94, 98 (1996).

The Supreme Court of Virginia has recognized only three circumstances in which a <u>Bowman</u> claim may arise: (1) where an employer violates a policy enabling the exercise of an employee's statutorily created right; (2) where the employer violates a public policy explicitly expressed in statute and the employee is in the class of persons protected by that statute; and (3) when an employee is discharged for refusing to engage in a criminal act.  <u>See</u> <u>Rowan v. Tractor Supply Co.</u>, 263 Va. 209 (2002); <u>Francis v. National Accrediting Commission of Career Arts & Sciences, Inc.</u>, 293 Va. 167 (2017).

When a plaintiff asserts the first type of <u>Bowman</u> claim, as Hooker does here, she must not only identify the specific Virginia statute on which she relies, but also "it is important to discern what right was conferred on [the] employee by statute, and then whether the employer's termination of employment violated the public policy underlying that right."  <u>Francis</u>, 293 Va. at 173.  Hooker's wrongful termination claim fails because the statute she cites confers no rights upon her and, regardless, her alleged termination does not violate the public policy underlying the cited statute.

**A.   The statute relied upon by Hooker does not confer any rights on her.**

A plaintiff asserting the first type of <u>Bowman</u> claim must identify a specific statute that expressly confers upon the plaintiff a specific right or duty that is in furtherance of a public

policy.  <u>Dray v. New Mkt. Poultry Prods., Inc.</u>, 258 Va. 187, 191–192 (1999).  In <u>Dray</u>, the

plaintiff was fired from her job as a quality control inspector at a poultry processing facility

because she reported unsanitary conditions to government inspectors after being directed not to

do so.  The plaintiff claimed that her termination violated the public policy underlying the

Virginia Meat and Poultry Products Inspection Act and that she had a right and duty to report

unsanitary conditions pursuant to "Code § 3.1-884.22, which forbids intrastate distribution of

uninspected, adulterated, or misbranded meat and poultry products [and] Code § 3.1-884.25(2),

which establishes criminal penalties for any person who 'resists, . . . impedes, . . . or interferes'

with state meat inspectors."  <u>Id</u>. at 191.  The Court held that "these provisions do not secure any

rights to this plaintiff, nor do any other provisions of the Act. Rather, the Act establishes a

regulatory mechanism directed only to government inspectors and industry management."  <u>Id</u>. at

191-92.  Thus, the Court concluded that "the Act affords plaintiff no express statutory right in

this regard that is in specific furtherance of the state's public policy regarding inspections of

meat and poultry products" and, therefore, her claims were properly dismissed. <u>Id</u>. at 192.

Like the plaintiff in <u>Dray</u>, Hooker has cited a statute that does not confer any specific right

or duty on her.  Hooker has identified Va. Code § 15.2-1428, which she alleges creates "a statutory

right to cast a vote on matters before the board, particularly appropriations."[3]  Am. Compl. ¶ 82.

Hooker further alleges that she "had to be permitted to cast her vote . . . free from retaliation by

---

[3] Hooker also appears to rely on Roanoke County Code Sec. 2-123(e) as another potential source
for this right.  Similar to Va. Code § 15.2-1428, Roanoke County Code Sec. 2-123 (e) requires
appropriations of money, imposition of taxes, and borrowing money to be done only be a
"recorded roll call affirmative vote."  Therefore, like § 15.2-1428, Roanoke County Code Sec.
2.123(e) does not confer any rights on Hooker.  And, regardless, only a Virginia statute can give
rise to a <u>Bowman</u> claim.  <u>Lawrence Chrysler Plymouth Corp.</u>, 251 Va. at 98-99 (1996) (requiring
a <u>Bowman</u> plaintiff to identify a specific Virginia statute to state a cause of action for wrongful
termination under <u>Bowman</u>); <u>McCarthy v. Texas Instruments</u>, 999 F. Supp. 823, 829 (E.D. Va.
1998) (holding that a local county ordinance is not a state statute and not a source of Virginia's
public policy for purposes of a <u>Bowman</u> claim.)

individuals representing her employer."  Am. Compl. ¶¶ 83.  Despite Hooker's assertions to the contrary, § 15.2-1428 does not confer any rights on Hooker to cast votes or to be free from retaliation.  Rather, § 15.2-1428 requires that "[n]o ordinance or resolution appropriating money exceeding the sum of $500, imposing taxes, or authorizing the borrowing of money shall be passed except by a recorded affirmative vote of a majority of all members elected to the governing body."  Thus, far from creating the right of any individual board member to cast a vote, the statute instead proscribes the type of vote—a recorded affirmative vote—that is required for certain actions to take effect.  Id.

**B. Hooker's alleged termination does not violate the public policy underlying Va. Code § 15.2-1428.**

A plaintiff asserting the first type of Bowman claim must also allege facts to show that her termination violates the public policy underlying the identified statute.  The Supreme Court of Virginia's analysis in Francis v. National Accrediting Commission of Career Arts & Sciences, Inc., 293 Va. 167 (Va. 2017), is particularly instructive.  In that case, Francis, an at-will employee of the defendant, claimed that she was wrongfully terminated because she obtained a preliminary protective order against a co-worker, who Francis claimed physically threatened her.  Francis claimed that Va. Code §§ 19.2-152.7:1 through 152.10, which provided the procedures for obtaining protective orders, granted her a statutory right to seek a protective order to protect her health and safety and that her termination violated the public policy underlying those statutes.  The Court in Francis held that a viable Bowman claim requires "a showing that the termination of employment itself violated the stated public policy of protection of health and safety."  Id. at 174.  The Court noted that Francis did not allege that her termination "somehow endanger[ed] her health and safety" or that her employer "prevented her from exercising her statutory rights under the Protective Order statutes," but rather, that Francis alleged only that she

was terminated because she exercised her right under the statute to seek a protective order. Id. Noting that "Bowman does not recognize a generalized cause of action for the tort of retaliatory discharge," the Court held that Francis failed to state a claim for wrongful termination.  Id.

As in Francis, Hooker's Bowman claim also fails because she has not alleged facts to show that her termination violated the public policy underlying § 15.2-1428.  Hooker does not even attempt to articulate the public policy that she believes underlies § 15.2-1428.  See Am. Compl., generally.  Neither § 15.2-1428, specifically, nor Article 4 of Chapter 14 of Title 2.2. in which § 15.2-1428 is found, expressly articulate a public policy served by the statute.  However, it can be inferred from the text of the statute that the public policy underlying § 15.2-1428 is that certain votes involving spending, taxing, or borrowing money must be done by recorded vote for purposes of transparency and accountability.  There are no allegations in the Amended Complaint that suggest that Hooker's termination will cause votes not to be recorded or that it results in less transparency and accountability in spending, taxing, or borrowing.  Accordingly, like the plaintiff in Francis, Hooker has failed to state a claim for wrongful termination under Bowman, and Count II must be dismissed for this additional reason.

## CONCLUSION

For the reasons stated above, Hooker has failed to allege facts to state any plausible claim for relief.  Defendants accordingly request that the Court dismiss Hooker's Amended Complaint in its entirety, and award Defendants such further relief as the Court deems appropriate.

[Signature block on following page]

14

Respectfully Submitted,

Cheryl Facciani, Timothy Greenway, Brent Hudson, Dr. Kenneth Nicely

By Counsel

/s/  Stacy L. Haney
Stacy L. Haney (VSB 71054)
R. Matthew Black (VSB 94663)
HANEY PHINYOWATTANACHIP PLLC
9201 Arboretum Pkwy, Suite 160
Richmond, VA 23236
Tel:     (804) 500-0310
Fax:     (804) 500-0309
shaney@haneyphinyo.com
mblack@haneyphinyo.com
*Counsel for Defendants Cheryl Facciani,*
*Timothy Greenway, Brent Hudson, and*
*Dr. Kenneth Nicely*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of February, 2024, I have electronically filed the foregoing using the CM/ECF system, which will automatically send email notification of such filing to counsel of record as follows:

Thomas E. Strelka (VSB 75488)
L. Leigh Rhoads (VSB 73355)
Brittany M. Haddox (VSB 86416)
Monica L. Mroz (VSB 65766)
STRELKA EMPLOYMENT LAW
4227 Colonial Ave.
Roanoke, VA 24018
Tel:     (540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
brittany@strelkalaw.com
monica@strelkalaw.com
*Counsel for Martha Kay Baird Hooker*

/s/  Stacy L. Haney
Stacy L. Haney (VSB 71054)
R. Matthew Black (VSB 94663)
HANEY PHINYOWATTANACHIP PLLC
9201 Arboretum Pkwy, Suite 160
Richmond, VA 23236
Tel:     (804) 500-0310
Fax:     (804) 500-0309
shaney@haneyphinyo.com
mblack@haneyphinyo.com
*Counsel for Defendants Cheryl Facciani, Timothy Greenway, Brent Hudson, and Dr. Kenneth Nicely*

16