## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## Roanoke Division

| | | |
|---|---|---|
| **MARTHA KAY BAIRD HOOKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 7:23-cv-00750** |
| | ) | |
| **CHERYL FACCIANI, et al** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
### MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff, Martha Kay Baird Hooker, files this Brief in Opposition to the Motion to Dismiss her Amended Complaint filed by Defendants, Cheryl Facciani, Timothy Greenway, Brent Hudson, and Dr. Kenneth Nicely ("the Defendants"), stating the following in support thereof:

### I.   INTRODUCTION

Ms. Hooker, an elected member of the Roanoke County Board of Supervisors ("BOS") since January 2016, and an employee of Roanoke County Public Schools ("RCPS") since 2002, was terminated from her employment in May 2023, because of a vote she cast on an appropriations measure before the BOS. Amended Complaint, ECF 15, ¶¶ 1, 3, 25-32, 36-37, 65-66. Three of the five members of the Roanoke County School Board ("the School Board Defendants") orchestrated her termination from RCPS because Ms. Hooker did not cast her vote in line with their will. ECF 15, ¶¶ 33-39, 44-52, 59, 61. The Roanoke County Superintendent, knowing the School Board Defendants were acting unlawfully, acquiesced to their will, and finalized Ms. Hooker's termination. ECF 15, ¶¶ 62-63. Ms. Hooker brought this lawsuit claiming damages for a violation of her rights

under 42 U.S.C. §1983 and wrongful termination under *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985), against the Defendants.

## II.   ARGUMENT

### A.  Ms. Hooker has sufficiently pled her §1983 Claim

Defendants contend that Ms. Hooker "has not alleged any facts to support the second element" of a §1983 claim: that "her 'interest in the expression at issue outweighed the employer's interest in providing effective and efficient services to the public.'" Defendants' Memorandum in Support of Motion to Dismiss Amended Complaint, ECF 21, p. 6 (citing *Minnick v. County of Currituck*, 521 F. App'x 255, 262-63 (4th Cir. 2013)). According to Defendants, this second element "requires a plaintiff to allege facts sufficient to show that her interest in the speech she identified outweighs the school system's interest in providing 'effective and efficient' services." *Id.*, citing *McVey v. Stacy*, 157 F.3d 271, 278 (4th Cir. 1998).

It is Ms. Hooker's position that her vote did not negatively affect the provision of educational services by RCPS or the Career & Technical Education Department ("CTE") where she worked. Ms. Hooker has alleged that her "vote to appropriate RCPS funding in accounting categories established by the State Board of Education did not impact any job duty, project, assignment, or goal related to her employment." ECF 15, ¶33. Her "vote did not impede or conflict with the performance of her duties or interfere with the operation of or undermine the mission of RCPS." ECF 15, ¶72. "Ms. Hooker's vote, one of five identical votes, had absolutely no effect on the mission, administration, or performance of RCPS." ECF 15, ¶74.

Thus, to require Ms. Hooker to allege facts which support a contention that her vote on the BOS was *more important* than RCPS's interest in educating students in

Roanoke County is to demand a comparison of apples to oranges.[1] The Fourth Circuit has recognized that, at least at the Motion to Dismiss stage, the two allegedly competing interests are often simply not comparable, and the issue cannot be decided without the discovery process.

> Here, we cannot say that Ridpath will be unable to show that his interest in First Amendment expression outweighed the University's interest in the efficient operation of his workplace. Nothing in the Amended Complaint indicates, for example, that his comments impaired the maintenance of discipline, hurt workplace morale, or constituted an abuse of his position. Moreover, the Administrators have not suggested how -- or even that -- Ridpath's remarks interfered with the University's efficient operation.
> Once a factual record is developed through discovery, the evidence could support the inference that Ridpath's workplace was impaired as a result of his comments and that he simply had to be terminated from his adjunct teaching position. . . . At the Rule 12(b)(6) stage, Ridpath's allegations warrant the inference that his free speech interests outweigh the detrimental effect, if any, his comments may have had on the efficiency of his workplace. Indeed, read in the proper light, the Amended Complaint alleges that he was relieved of his adjunct teaching position for protected statements that had no impact on his workplace whatsoever. Accepting those allegations as true and giving Ridpath the benefit of the reasonable factual inferences, we cannot say that it appears beyond all doubt that Ridpath can prove no set of facts to tip the *Pickering* balance in his favor. Accordingly, Ridpath has sufficiently shown that his interest in speaking outweighed the University's interest in promoting the efficient provision of public services, and he has satisfied the second prong of the *McVey* test.

*Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006) (citations and internal quotation marks omitted). In deciding *Ridpath*, the Fourth Circuit followed its earlier decision in *McVey* in which it recognized that the issue of whether "[the employer's] interests outweighed [the plaintiff's] interest in speaking out publicly" should be "defer[red] . . . until the record is better developed," in discovery. *McVey*, 157 F.3d at

---

[1] Defendants argue not that the interests of RCPS and Hooker were not comparable, but that Hooker should be required to prove a negative proposition, faulting her for failing to "allege a single fact that would demonstrate how significant funding restrictions . . . *could possibly not impact* school division operations." ECF 21,p. 8, fn 2. The BOS decision did not deprive RCPS of funding, but rather allocated the funding in categories designed by the state Board of Education for such disbursements. See ECF 15, ¶¶ 26-27.

3

279. *Ridpath* held that the question of whether the plaintiff's speech "impaired" his workplace "is not to be assessed under Rule 12(b)(6) but in Rule 56 summary judgment proceedings." *Ridpath*, 447 F.3d at 318.

Defendants contend, however, that Ms. Hooker's "conclusory statements" about the lack of effect of her vote on the mission of RCPS have no merit because "[t]he facts alleged [in the Amended Complaint] actually demonstrate the opposite." ECF 21, p. 7. Specifically, Defendants point to the fact that Ms. Hooker was the Work-Based Learning Coordinator for RCPS and worked directly for the CTE Director. ECF 21, p. 7. Defendants allege Ms. Hooker's position in the RCPS org chart and her "ability to negatively impact funding" as a member of the BOS, "impaired discipline by her supervisor" and "harmony among co-workers" and "impeded the performance of her duties and interfered with the operation of the CTE department [] if not the entire school system."[2] ECF 21, p. 7-8.

Plaintiff's position in the org chart is not conclusory evidence that her vote on the BOS impaired the mission of her employer. In *McVey*, 157 F.3d at 274, the plaintiff Airport Manager was terminated for taking a position which "embarrass[ed] the [Airport] Commission." The Airport Manger was the top officer at the airport and reported to the Airport Commission, *id*. at 278, much like the superintendent of RCPS reports to the School Board. Even though the Airport Manager likely occupied the top spot on the org

---

[2] Defendants, however, are simply restating *Pickering* factors with no specific facts to support them—as they accuse Plaintiff of doing.  See ECF 21, p. 8. Defendants have not alleged, for example, that Jason Suhr, Plaintiff's supervisor, was unable to discipline her.  Rather, the only facts about the relationship between Mr. Suhr and Ms. Hooker come from the Amended Complaint, which clearly states that Mr. Suhr was pleased with her performance and requested that "[she] continue to work beyond her VRS contract" because of her "positive performance." ¶14.

chart, the Fourth Circuit declined to find based upon her position alone, that her speech "disrupt[ed] the operation and mission of the agency." *Id*. Rather, the court

> conclude[d] that the question [of] whether [the Airport Manager's] interest in such speech was outweighed by the agency's interests in effective and efficient management as well as public confidence is still open for determination. Thus, the district court must determine [following discovery] whether [the Airport Manager] was the agency's public representative and whether the agency's interests outweighed her interest in speaking out publicly.

*Id*. at 279 (4th Cir. 1998). By contrast, Ms. Hooker worked under the Director of CTE, who reported to an Assistant Superintendent, who was under the Superintendent, who reported to the School Board. If the Airport Manager cannot be said, by virtue of her title, to have negatively impacted her employer, Mrs. Hooker certainly does not have that ability based upon her position.

### B.  The Defendants are not entitled to Qualified Immunity

Defendants seem to suggest that they are entitled to Qualified Immunity because (they allege) Ms. Hooker has not shown that "her interests outweigh [their] interests."[3] Qualified immunity, however, attaches when a government actor's conduct cannot be found to have violated *a clearly established* constitutional right. See *Henry v. Purnell*, 501 F.3d 374, 376-77 (4th Cir. 2007).

> To ring the "clearly established" bell, there need not exist a case on all fours with the facts at hand. In other words, the nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent the denial of qualified immunity. Rather, the unlawfulness must be apparent in light of pre-existing law.

---

[3] "For the same reasons that Hooker's allegations fail to show that her interests outweigh the Defendants' interests, . . . it was not 'clearly established' that Hooker's interests under the circumstances would outweigh the Defendants' interest in the effective and efficient provision of services. Accordingly, the Defendants are entitled to qualified immunity and the Complaint must be dismissed." ECF 21, p. 9.

*Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015) (citations and internal quotation marks omitted).

Ms. Hooker is not simply a public employee speaking her mind. She is an elected member of a local government body, tasked under state law with appropriating funds for public schools in its jurisdiction. ECF 15, ¶¶ 25-31. Ms. Hooker's "protected speech" was not an interview with the local newspaper, or her personal opinion shared in a public setting, but her participation in a unanimous vote taken at the Board of Supervisors. *Id.*

When the employee is a legislative officer or member of a board, the employee's vote is clearly established, constitutionally protected speech. "Voting by members of municipal boards, commissions, and authorities comes within the heartland of First Amendment doctrine, and the status of public officials' votes as constitutionally protected speech [is] established beyond peradventure of doubt." *Stella v. Kelley*, 63 F.3d 71, 75 (1st Cir. 1995); *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 545 (9th Cir. 2010); *Brewer v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 953 F. Supp. 406, 410 (D.D.C. 1997).

> [T]he act of voting on public issues by a member of a public agency or board comes within the freedom of speech guarantee of the first amendment. This is especially true when the agency members are elected officials. There can be no more definite expression of opinion than by voting on a controversial public issue.

*Miller v. Hull*, 878 F.2d 523, 532 (1st Cir. 1989). The Supreme Court has specifically rejected the argument that elected officials have fewer first amendment rights than ordinary citizens. See *Bond v. Floyd*, 385 U.S. 116, 133, 87 S. Ct. 339, 348 (1966).

### C. The Amended Complaint details the actions that the school board defendants took to effectuate Ms. Hooker's termination.

Finally, Defendants argue that Ms. Hooker's §1983 claim must be dismissed because her "Complaint is devoid of any allegation that [the School Board Defendants]

took any action to effectuate her alleged termination." ECF 21, p. 10.   According to Defendants, Ms. Hooker has failed to allege "that any of the three actually did anything to cause Hooker's alleged termination." ECF 21, p. 10. This is simply false.

The Amended Complaint alleges that "the School Board Defendants determined to use the advantage of their position as Ms. Hooker's employer to retaliate unlawfully against Ms. Hooker for her BOS vote." ECF 15, ¶ 44. Though they had only an advisory role in personnel matters, they used their authority over the superintendent's position to lobby Dr. Nicely to terminate Ms. Hooker.   ECF 15, ¶¶ 46-48. They based their recommendation for her termination on a "conflict of interest" even though they knew Ms. Hooker had no conflict of interest under the State and Local Government Conflict of Interests Act, and even though Roanoke County's own attorney found that she had no conflict of interest. ECF 15, ¶45.

The School Board Defendants arranged for Ms. Hooker's termination in secret— deliberately avoiding discussion in a school board meeting, as would have been required for all such school board business. ECF 15, ¶¶ 49-51. Instead, they "communicated separately, and without the knowledge of the full School Board to Dr. Nicely, their desire that Ms. Hooker's employment be terminated." ECF 15, ¶52. This communication was forceful and effective because of the authority they had over Dr. Nicely's position. See ECF 15, ¶47. This secretive lobbying by the School Board Defendants was the reason Dr. Nicely cited for Hooker's termination. See ECF 15, ¶59. Dr. Nicely acknowledged that this pressure from the School Board was the reason he was terminating Hooker. See ECF 15, ¶61.

**D. Ms. Hooker has sufficiently alleged a *Bowman* claim for wrongful termination based upon violation of the public policy underlying Code §15.2-1428.**

In *Bowman*, two bank employees were told by management to vote their bank stock shares in favor of a proposed merger or their employment with the bank would be terminated. 229 Va. at 537, 331 S.E.2d at 799. When the employees protested that their proxy votes executed under duress were invalid, and thus the merger was not properly adopted, the employees were fired. *Id*. They sued the bank for unlawful termination arguing that the bank's decision to terminate their employment violated their statutory right to vote their stock shares as they saw fit. *Id*. at 538-39, 331 S.E.2d at 800. The Supreme Court of Virginia agreed and established the *Bowman* exception to the employment at will doctrine. *Id*.

**1. Va. Code §15.2-1428 conveys rights because former Va. Code §13.1-32 conveys rights.**

Defendants argue that Va. Code §15.2-1428, which explains how ordinances may be passed by a county Board of Supervisors, does not confer any voting rights on the members of the Board. ECF 21, p. 12-13. Under the reasoning of *Bowman*, however, Va. Code §15.2-1428, conveys to members of the Board of Supervisors, a statutory right to vote on appropriations measures.

The statutory right cited by the *Bowman* employees came from former Va. Code §13.1-32, now codified at §13.1-662: "[U]nless the articles of incorporation provide otherwise, each outstanding share, regardless of class or series, is entitled to one vote on each matter voted on at a shareholders' meeting. Only shares are entitled to vote." Va. Code § 13.1-662. The statute does not explicitly state that shareholders have a right to vote their shares free from duress; rather, it states that in the absence of another formula set out in the articles of incorporation, the ratio of shares to votes is one-to-one. Still, the

8

*Bowman* court held that this provision tying votes on corporate matters to share ownership "conferred on these plaintiffs as stockholders the right to one vote, for each outstanding share of stock held on each corporate matter submitted to a vote at a meeting of stockholders." *Bowman*, 229 Va. at 539, 331 S.E.2d at 800. Post-*Bowman* decisions continued to find in the mathematical statutory language, "each . . . share . . . is entitled to one vote," a legal right for shareholders to vote their shares. See *Williams v. Virginia*, Civil Action No. 3:11CV863-HEH, 2012 U.S. Dist. LEXIS 97805, at *21 n.4 (E.D. Va. July 13, 2012) ("a statute providing shareholders with the right to vote their shares"); *United States ex rel. Martinez v. Va. Urology Ctr., P.C.*, No. 3:09-CV-442, 2010 U.S. Dist. LEXIS 77078, at *21 (E.D. Va. July 29, 2010) ("state law conferred on plaintiffs a right to vote as stockholders"); *Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 673 (E.D. Va. 2005) ("statute in question explicitly conferred 'the right to one vote[] for each outstanding share of stock held . . .' on *all* shareholders"); *Dray v. New Mkt. Poultry Prods.*, 45 Va. Cir. 433, 437 (Rockingham 1998) ("statute conferred rights on [stockholders]"); *Roland v. Bon Air Cleaners, Inc.*, 19 Va. Cir. 184, 185 (Richmond City 1990) ("termination in *Bowman* had been in retaliation for the exercise of rights conferred on a shareholder by statute"); *Gulledge v. Dyncorp, Inc.*, 24 Va. Cir. 538, 541 (Fairfax County 1989) ("statutory right to vote as a shareholder").

If Va. Code §13.1-32, provides a shareholder the right to vote shares, Va. Code §15.2-1428, certainly provides a right for a member of a local governing body to cast a vote on appropriations measures. The statute forming the basis for Hooker's *Bowman* claim states as follows:

> No ordinance or resolution appropriating money exceeding the sum of $500, imposing taxes, or authorizing the borrowing of money shall be passed except by a recorded affirmative vote of a majority of all members elected to the governing

9

> body. In case of the veto of such an ordinance or resolution, where the power of veto exists, it shall require for passage thereafter a recorded affirmative vote of two-thirds of all members elected to the governing body.

Va. Code §15.2-1428. The statute requires that all measures appropriating funds be voted on by the "members elected to the governing body" and that such measures may not pass "except by a recorded affirmative vote of a majority of all members." *Id.* By its plain language, Va. Code §15.2-1428 contemplates participatory voting by "*all* members elected to the governing body" when the matter up for consideration involves funding.[4]  This statute ties voting to holding elected office, just as former Va. Code §13.1-32, tied voting to stock ownership.

Defendants ask this Court to rely on *Dray v. New Mkt. Poultry Prods., Inc.*, 258 Va. 187, 518 S.E.2d 312 (1999) to find that Va. Code §15.2-1428, conveys no rights to Ms. Hooker.  In *Dray*, the Supreme Court of Virginia held that statutes which "forbid intrastate distribution of uninspected, adulterated, or misbranded meat and poultry products . . . [did] not secure any rights to [the] plaintiff," a quality control inspector who reported unsanitary conditions to government inspectors as a "common-law 'whistleblower.'" *Id.* at 191-92, 518 S.E.2d at 314.

Unlike the *Dray* plaintiff, however, Ms. Hooker is not trying to anchor a whistleblower claim to a statute.  She is citing a statute which provides for voting by elected members of local government boards on appropriations matters and alleging that her termination for casting a vote on an appropriations matter on the Roanoke County

---

[4] Contrast Va. Code §15.2-1428 with Va. Code §15.2-1427, the statutory provision dealing with ordinances generally. The general provision says that "an ordinance may be adopted by majority vote of those present and voting at any lawful meeting." For a non-appropriation ordinance, the statute allows for the possibility that those present, may not be voting, and there is no requirement that the votes be "recorded."

Board of Supervisors violates the public policy underlying the statute.  Hooker's argument tracks with that of the *Bowman* plaintiffs—not the *Dray* plaintiff, who was fired for reporting her employer's violation of state statutes.

> **2.  Defendants' successful efforts to terminate Ms. Hooker's employment violated the public policy underlying Va. Code §15.2-1428.**

Citing *Francis v. National Accrediting Commission of Career Arts & Sciences*, 293 Va. 167, 796 S.E.2d 188 (2017), Defendants argue that Ms. Hooker's termination does not violate the public policy underlying Va. Code §15.2-1428. In *Francis*, an employee reported a threatening interchange with a coworker to her employer, who took no action to protect her. *Id.* at 170, 796 S.E.2d at 189. The employee, in fear of the coworker, filed for a protective order against the coworker, and was terminated as a result. *Id.*, 796 S.E.2d at 189-190. The employee brought a *Bowman* type 1 claim against her employer arguing that she was terminated for "exercis[ing] her statutorily created right to obtain a court protective order to protect her health and safety." *Id.* at 173, 796 S.E.2d at 191.

According to the *Francis* court, the employee's termination had to have a connection—not to the statute—but to the public policy underlying the statute, noting that the discharge in *Bowman* was unlawful "because the employer had misused its freedom to terminate the services of at-will employees *in order to subvert a right guaranteed to stockholders by statute*." *Id.* at 174, 796 S.E.2d at 191 (citing *Miller v. SEVAMP, Inc.*, 234 Va. 462, 467, 362 S.E.2d 915, 918 (1987) (emphasis added)). *Francis* contrasted the protective order statutes with *Bowman*'s shareholder voting statute and noted that "[u]nlike in *Bowman*, where the public policy existed to protect the exercise of the statutory right to vote one's shares, . . . there exists no corresponding public policy in the Protective Order Statutes protecting the exercise of the right to seek a protective order."

*Id.* at 174, 796 S.E.2d at 192. Instead, the court noted that "public policy expressly stated in the Protective Order Statutes is to protect the health and safety of a person seeking a protective order." *Id.* at 175, 796 S.E.2d at 192. The employer may have terminated the employee in retaliation for filing for a protective order against a coworker, but the termination did not violate her "health and safety." *Id.*

In Ms. Hooker's case, her statutory right, as a voting provision, has the same implicit public policy as the statute at issue in *Bowman*. *Bowman* held that "[former Va. Code §13.1-32] contemplates that the right to vote shall be exercised free of duress and intimidation imposed on individual stockholders by corporate management." 229 Va. at 540, 331 S.E.2d at 801. The *Bowman* court realized that a statute declaring that each share was entitled to one vote would be meaningless, unless "the shareholder [could] exercise this right without fear of reprisal from corporate management which happens also to be the employer." *Id.*  Thus, *Bowman* held that "the right conferred by [former Va. Code §13.1-32] [wa]s in furtherance of established public policy, [and] the employer [could] not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation."[5]  *Id.*

Under *Bowman*, a public policy need not be explicitly stated in the statute if the right provided by the statute is ineffective without the policy.  "[T]o fully realize the public

---

[5] The close association between the employer and the employee's statutory right, which gives the employee some "power" over the employer is also notable. The *Bowman* plaintiffs, by virtue of their stock ownership, which entitled them to vote, had some control over the decisions impacting their employer.  The employer terminated them for casting that vote adversely to the employer's preferences.  Similarly, Ms. Hooker, as a member of the Board of Supervisors, has a statutory right to vote on matters which appropriate funding for her employer. Her employer used its power to punish her for a vote they believed was adverse to them.  The *Francis* plaintiff could show no such relationship between her employment, a statutory right, and her ability to affect her employer.

policy underlying the shareholders' statutory right, shareholders had to be allowed to vote their shares free from duress or intimidation." *Williams*, No. 3:11CV863-HEH, at *21 n. (citing *Bowman*, 229 Va. at 540, 331 S.E.2d at 801).

> [T]he statute which was the basis for the Supreme Court's decision in *Bowman* does not explicitly state that shareholder votes must be "free of duress and intimidation" and it certainly contains no explicit prohibition of one group of shareholders placing pressure or economically coercing other shareholders to achieve a desired corporate outcome. Rather, according to the Supreme Court, the statute "contemplates this idea of volitional voting" and this idea embedded within the statute can and did serve as the clearly articulated public policy of Virginia upon which a wrongful termination claim could be based.

*Gochenour v. Beasley*, 47 Va. Cir. 218, 226 (Rockingham County 1998). See also *Leverton v. Alliedsignal, Inc.*, 991 F. Supp. 486, 492 (E.D. Va. 1998) (*Bowman*, 229 Va. at 540, 331 S.E.2d at 801) (public policy violated by the bank's termination of its employees "implied in the right to vote shares of corporate stock").

Arguably, Va. Code §15.2-1428, similar in purpose to former Va. Code §13.1-32, conveys a more important right and has a stronger public policy basis than the statute at issue in *Bowman*. Va. Code §15.2-1428, a statute which provides for voting by members of local governing bodies on funding measures which effect their constituents and the operation of state-mandated services, i.e. education, in their localities, has far greater public policy implications than a statute providing that unless a company decides otherwise, each share of corporate stock has one vote. A public policy that an elected official should vote "free from duress" and "without fear of reprisal [by his] employer," *Bowman*, 229 Va. at 540, 331 S.E.2d at 801, preserves democratic institutions and is undoubtedly in the class of policies which "protect the property rights, personal freedoms, health, safety, or welfare of the people in general." *SEVAMP*, 234 Va. at 468, 362 S.E.2d at 918.

When a state law provides a right to cast a vote, and the public policy underlying that statute is that the vote must be cast free of duress or intimidation, an "employer's actions in discharging the employees [for the votes they cast] violate[s] that public policy." *Williams*, No. 3:11CV863-HEH, at *21 n.4 (citing *Bowman*, 229 Va. at 540, 331 S.E.2d at 801); *Accord Va. Urology Ctr., P.C.*, No. 3:09-CV-442, at *21 (citing *Bowman*, 229 Va. at 540, 331 S.E.2d at 801) ("employers [may] not be allowed to frustrate the purpose of the statute by conditioning continued employment on the casting of particular votes.")

An employer can violate the public policy underlying a statutory right to vote even if it does not successfully prohibit an employee from voting.

> [T]he Supreme Court of Virginia has never held that to satisfy the first *Bowman* exception, an employee must show that he was, in fact, prohibited from exercising a statutory right. To the contrary, the . . . Court noted that the employee must prove that the employer *violated a policy* enabling the exercise of an employee's statutorily created right, not that the employer must actually prevent the employee from exercising the statutorily created right.

*McFarland v. Va. Ret. Servs. of Chesterfield, L.L.C.*, 477 F. Supp. 2d 727, 734 (E.D. Va. 2007) (citing *Rowan v. Tractor Supply Co.,* 263 Va. 209, 213, 559 S.E.2d 709, 711). See also *Gulledge v. Dyncorp, Inc.*, 24 Va. Cir. 538, 542 (Fairfax County 1989) ("Although it is not necessary to prove that the plaintiff was actually coerced to vote a certain way, the plaintiff must provide some proof that his termination was cause[d] by the way he voted.")

## III.   CONCLUSION

Ms. Hooker has alleged sufficient facts to meet the elements of her §1983 claim and survive Defendant's Motion to Dismiss. The element contested by Defendants—the weighing of Ms. Hooker's right to cast a vote as a member of the BOS against Defendants' right to take a position on that vote—is not properly decided on a Motion to Dismiss. Ms. Hooker's position as the Work-Based Learning Coordinator in the CTE Department does

14

not establish that Ms. Hooker's right to vote on matters before the BOS should be subordinate to RCPS' preference to receive funding in a particular way. In as much detail as practicable at this pre-discovery stage, Ms. Hooker has clearly alleged the actions taken by the School Board Defendants to terminate her employment.  Finally, Ms. Hooker has set out a *Bowman* claim based on Va. Code §15.2-1428, which closely parallels the claim made by the two bank employees in *Bowman v. State Bank of Keysville*. The two statutes share an implicit public policy that those with a statutory right to cast a vote should be able to do so "free of duress and intimidation." By terminating Ms. Hooker's employment in response to her vote on an appropriations matter before the BOS, the Defendants violated the public policy underlying Ms. Hooker's statutory right to cast a vote as a member of the BOS.

Respectfully submitted,

**MARTHA KAY BAIRD HOOKER**

By: _____
      Thomas E.  Strelka, Esq. (VSB # 75488)
      STRELKA EMPLOYMENT LAW

Thomas E.  Strelka, Esq. (VSB # 75488)
L. Leigh Rhoads, Esq. (VSB # 73355)
Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB # 65766)
STRELKA EMPLOYMENT LAW
4227 Colonial Ave.
Roanoke, VA  24018
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
brittany@strelkalaw.com
monica@strelkalaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of March 2024, the foregoing was filed via the

Court's electronic CM/ECF filing system which sent a Notice of Electronic Filing to:

Stacy L. Haney
R. Matthew Black
HANEY PHINYOWATTANACHIP PLLC
9201 Arboretum Pkwy, Suite 160
Richmond, VA 23236
804-500-0310
shaney@haneyphinyo.com
mblack@haneyphinyo.com

_____

Thomas E. Strelka

16