UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| MARTHA KAY BAIRD HOOKER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 7:23-cv-00750 |
| CHERYL FACCIANI, et al., | ) ) ) |
| Defendants. | ) |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Defendants Cheryl Facciani, Timothy Greenway, Brent Hudson, and Dr. Kenneth Nicely (collectively, "Defendants"), by counsel, submit this reply memorandum in support of their Motion to Dismiss Plaintiff's Amended Complaint ("Am. Compl.") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

**I.  The official capacity claims against the Defendants must be dismissed.**

As demonstrated in the Defendants' Memorandum in Support of Motion to Dismiss Amended Complaint (ECF No. 21) ("Memorandum"), the official capacity claims against all four Defendants must be dismissed because Hooker has not alleged that any policy or custom of the School Board resulted in her termination. Memorandum at 4-5. Hooker does not address this argument in her Opposition and, therefore, appears to have conceded that the official capacity claims should be dismissed. See Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss Amended Complaint (ECF No. 23) ("Opposition"), generally. Accordingly, and for

1

the reasons stated in Defendants' Memorandum, the official capacity claims against all four Defendants must be dismissed.

## II.      Hooker's First Amendment retaliation claim (Count I) must be dismissed.

Hooker's First Amendment retaliation claim brought pursuant to § 1983 must be dismissed against all four Defendants because she has failed to allege facts sufficient to make out her claim and because the Defendants are entitled to qualified immunity. Memorandum at 5-9. In addition, the First Amendment claim asserted against Defendants Facciani, Greenway, and Hudson must also be dismissed because there is no allegation that any of these Defendants took any action that caused the alleged constitutional deprivation. Memorandum at 9-10.

### A.      Hooker has failed to allege facts sufficient to state a claim of retaliation under the First Amendment.

As demonstrated in the Defendants' Memorandum, Hooker's First Amendment retaliation claim fails because she has not alleged <u>facts</u> to support the second element of her claim (also known as <u>Pickering</u> balancing): that her "interest in the expression at issue outweighed the employer's interest in providing effective and efficient services to the public." <u>See</u> Memorandum at 6-7.

In her Opposition, Hooker does not point to any <u>factual</u> allegations in the Amended Complaint that would demonstrate how her interest in the votes at issue outweigh the Defendants' interests in providing effective and efficient services to the public. Rather, Hooker merely repeats the <u>conclusory</u> allegations that parrot the factors the Fourth Circuit considers when engaging in the <u>Pickering</u> balancing. Opposition at 2. This court is not, however, required to accept conclusory allegations as true for purposes of a motion to dismiss. <u>See</u> <u>Supinger v. Virginia</u>, 167 F. Supp. 3d 795, 810 (W.D. Va. 2016) ("It is well established that 'courts are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting <u>Twombly</u>,

2

550 U.S. at 555); Hinton v. Virginia Union Univ., 185 F. Supp. 3d 807, 814 (E.D. Va. 2016) ("Nor is the court required to accept as true a legal conclusion unsupported by factual allegations.") (citing Iqbal, 556 U.S. at 678–79).

Hooker also inexplicably argues that "to require [her] to allege facts which support a contention that her vote on the BOS was *more important* than RCPS's interest in educating students in Roanoke County is to demand a comparison of apples to oranges." Opposition at 2-3. While perhaps an inartful description, this is precisely what the Fourth Circuit requires a public employee asserting a First Amendment retaliation claim to plead and ultimately prove. See, e.g., McVey v. Stacy, 157 F.3d 271, 277-78 (4th Cir. 1998).

Citing Ridpath v. Bd. of Governors Marshall Univ, 447 F.3d 292 (4th Cir. 2006), Hooker also incorrectly claims that the "Fourth Circuit has recognized that, at least at the Motion to Dismiss stage, the two allegedly competing interests are often simply not comparable, and the issue cannot be decided without the discovery process." Opposition at 3. No aspect of the Ridpath decision turns on – or even mentions – "competing interests" that are "not comparable." Rather, the court's decision in Ridpath turns on the fact that there were no allegations in the complaint to indicate that the plaintiff's statements "impaired the maintenance of discipline, hurt workplace morale, or constituted an abuse of his position." Id. at 318  Moreover, the court noted the defendants "have not suggested how – or even that – [the plaintiff's] remarks interfered with the University's efficient operation." Id.  Unlike Ridpath, however, the facts alleged by Hooker do lead to an inference that her speech must necessarily impair the maintenance of discipline, hurt workplace morale, imped the performance of her duties, and interfer with the operation of her department.  Memorandum at 7-8.  And, unlike the University in Ridpath, the Defendants

3

here have suggested both that Hooker's speech interfered with efficient operations and how it did so. Memorandum at 7-8. Accordingly, this case is distinguishable from Ridpath.

Hooker also argues that she is like the Airport Manager in McVey v. Stacy, 157 F.3d at 274, who, according to Hooker, "likely occupied the top spot on the org [sic] chart." Opposition at 4-5. Hooker claims, incorrectly, that "the Fourth Circuit declined to find based upon her position alone, that her speech 'disrupted the operation and mission of the agency." Opposition at 4-5. Thus, Hooker argues, also incorrectly, that "[i]f the Airport Manager cannot be said, by virtue of her title, to have negatively impacted her employer, [] Hooker certainly does not have that ability based upon her position." Opposition at 5. Despite Hooker's suggestion to the contrary, McVey does not stand for the proposition that a plaintiff's job title is determinative of whether that plaintiff has satisfied the Pickering balancing test.[1] Rather, the court in McVey was concerned with whether the plaintiff was an "agency head" or held "a confidential, policymaking, or public contact role" because those positions are entitled to significantly less First Amendment protection. Id. at 278-79. Moreover, the court in McVey noted that there were not sufficient allegations in the complaint for the court to determine the applicability of qualified immunity. Unlike the complaint in McVey, however, Hooker's Amended Complaint does contain facts from which the court can determine that Hooker's speech did interfere with the efficient operation of the school system.[2] Memorandum at 7-8.

---

[1] Nor did the Defendants cite McVey for this proposition, which Hooker also seems to suggest. Opposition at 4-5.

[2] In addition, Hooker attempts to allege new facts in her Opposition that are not included in her Amended Complaint. See Opposition at 5 (asserting that the Director of CTE "reported to an Assistant Superintendent, whi was under the Superintendent, who reported to the School Board," none of which is alleged in the Amended Complanit.) A plaintiff cannot cure defects in their pleading by alleging new facts in their opposition to a motion to dismiss. See Smart Wearable Techs. Inc. v. Fitbit, Inc., 274 F. Supp. 3d 371, 377 n.3 (W.D. Va. 2017) ("[I]t is axiomatic that

Because Hooker failed to allege non-conclusory facts to support that her interest in her speech outweighed the Defendants' interest in the efficient and effective operation of the school system, Hooker's First Amendment retaliation claim must be dismissed.

**B.      The Defendants are also entitled to qualified immunity with respect to Hooker's First Amendment claim.**

As demonstrated in the Defendants' Memorandum, government officials, such as Defendants here, are protected by qualified immunity unless the right violated was "clearly established" when the violation occurred. Memorandum at 8-9. And when a public employee's speech is at issue, necessitating Pickering balancing, "only infrequently will it be clearly established [that the speech] is constitutionally protected." Memorandum at 8-9 (citing Cannon v. Vill. of Bald Head Island, 891 F.3d 489 (4th Cir. 2019); Stickley v. Sutherly, 416 F. App'x. 268, 272 (4th Cir. 2011) (same); Mills v. Steger, 64 F. App'x. 864, 874 (4th Cir. 2003) ("the individualized assessment required by the Pickering balancing test means we can rarely say that the law was clearly established and that reasonable officials would have been aware of the law").

In her argument addressing qualified immunity, Hooker entirely ignores the Pickering balancing and the cases cited in the Defendants' Memorandum. Opposition at 5-6. Instead, Hooker seems to suggest, incorrectly, that because she is an elected public official, her speech is not subject to Pickering balancing.[3] The cases Hooker cites for her argument, however, all involve public officials who were removed or resigned from their elected or appointed office, not

---

the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting Mylan Labs., Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1068 (D. Md. 1991))).

[3] This is despite conceding in the preceding section of her Opposition that Pickering balancing does apply. See Opposition at 2-5.

terminated from employment by a public body, because of their speech.[4] See Stella v. Kelley, 63 F.3d 71 (1st Cir. 1995) (removal of appointed members of a local Zoning Board of Appeals by the Board of Selectmen that had appointed them); Blair v. Bethel Sch. Dist., 608 F.3d 540 (9th Cir. 2010) (school board member elected to role of vice president and subsequently removed from that role by fellow school board members); Brewer v. D.C. Fin. Responsibility & Mgmt. Assistance Auth., 953 F. Supp. 406 (D.D.C. 1997) (appointed members of the D.S. Lottery & Charitable Games Control Board forced to resign after being ordered to take a vote to reinstate the Board's former executive director); Miller v. Hull, 878 F.2d 523 (1st Cir. 1989) (removal of elected members of the local redevelopment authority by the local board of selectmen). Indeed, the court in Miller, a case relied upon by Hooker, explicitly recognizes the difference between removal of a public official from office and termination of a public employee's employment, stating "discharging a government employee because of his speech on matters of personal interest, or because of speech that disrupts his agency's work, does not necessarily violate the First Amendment. But these situations are remote from the one presented in this case." 878 F.2d at 523, n.13 (citations omitted).

Unlike the plaintiffs in Stella, Blair, Brewer, and Miller, Hooker is not claiming that she was removed from her position on the Board of Supervisors but, rather, that she was terminated from her public employment because of speech she made as a public official. Accordingly, Stella, Blair, Brewer, and Miller are inapplicable.

---

[4] Moreover, the cases cited by Hooker, Opposition at 5-6, are neither controlling authority nor "a consensus of cases of persuasive authority," which is required for a right to be clearly established. See Schoonover v. Clay Cnty. Sheriff's Dep't, 2023 U.S. App. LEXIS 14883, *10 ("For a right to be clearly established, it must be grounded in controlling authority or a robust consensus of cases of persuasive authority")(internal citations omitted).

As Defendants demonstrated in their Memorandum, at 9, and Hooker has not refuted, the Fourth Circuit has repeatedly recognized that "because of the 'sophisticated balancing' involved in First Amendment questions, only infrequently will it be clearly established that a public employee's speech on a matter of public concern is constitutionally protected." Cannon, 891 F.3d at 499.  This case is no exception to that rule.  Moreover, as demonstrated above, supra § II.B., "the outcome of the Pickering balancing test is not beyond debate," and so the Defendants are entitled to qualified immunity.  See Crouse v. Town of Moncks Corner, 848 F.3d 576, 585 (4th Cir. 2017).

      **C.**      **The First Amendment claim against Facciani, Greenway, and Hudson must also be dismissed for the additional reason that Hooker has failed to allege that they took any action against her.**

The First Amendment claim against Facciani, Greenway, and Hudson must be dismissed for the additional reason that Hooker has not alleged that they personally took any action that resulted in the deprivation of her rights.  Memorandum at 9-10.  In her Opposition, Hooker concedes that Facciani, Greenway, and Hudson "only had an advisory role in personnel matters," but then argues that they "desire[d] that Mrs. Hooker's employment be terminated" and so they "secretly lobb[ied]" Nicely to terminate her employment.  Opposition at 7.  Wanting someone to be terminated and talking about that desire is not sufficient personal action to sustain a § 1983 claim.[5]  Rather, Hooker must "must 'affirmatively show[ ] that the [defendant] acted personally in the deprivation of plaintiff's rights.'"  Bhattacharya v. Murray, No. 3:19-CV-54, 2022 U.S. Dist. LEXIS 129588, at *12 (W.D. Va. Jul. 21, 2022).

---

[5] Nor does Hooker cite to a single authority to support her argument that these allegations are sufficient to state a claim under § 1983.  See Opposition 6-7.

7

Because Hooker has not alleged that Facciani, Greenway, or Hudson personally took any action to cause Hooker's alleged termination, the First Amendment retaliation claim must be dismissed as to them for this additional reason.

### III. Hooker's claim for wrongful termination under Bowman (Count II) must be dismissed.

As demonstrated in Defendants Memorandum, Hooker's Bowman claim must be dismissed for two reasons. First, Virginia Code § 15.2-1428 does not confer any right on Hooker. Memorandum at 11-13. Second, Hooker's alleged termination did not violate the public policy underlying § 15.2-1428. Memorandum at 13-14. Nothing in Hooker's Opposition changes this result.

#### A. The statute relied upon by Hooker does not confer any rights on her.

A plaintiff asserting the first type of Bowman claim must identify a specific statute that expressly confers upon the plaintiff a specific right or duty that is in furtherance of a public policy. Memorandum at 11-13. Hooker has identified Va. Code § 15.2-1428, which she claims confers on her, as a member of the Board of Supervisors, a right "to cast a vote on appropriations measures."[6] Opposition at 9. Hooker's Opposition relies heavily on Bowman v. State Bank of Keysville, 229 Va. 534 (Va. 1985), in which the Court considered former Va. Code § 13.1-32, that expressly provided "each outstanding share, regardless of class, is entitled to one vote on each matter voted on at a shareholder's meeting." The Court held that § 13.1-32 implicitly "contemplates that the right to vote shall be exercised free of duress and intimidation." Id. at

---

[6] In her Amended Complaint, Hooker also cites Roanoke County Code Sec. 2-123(e) as a basis for her claimed right to vote. A county code cannot form the basis of a Bowman claim and, regardless, Sec. 2-123(e) does not establish a right to vote any more that § 15.2-1428 does. Memorandum at 12, n.3. Regardless, Hooker appears to have abandoned her reliance on the county code as she does not address it in her Opposition.

8

540. Central to the Bowman holding, however, was that the statute at issue expressly created a right to vote. Id. at 540.

Unlike the statute in Bowman, however, §15.2-1428, relied upon here by Hooker, does not create a right to vote. Section 15.2-1428 does not say that a member of the Board of Supervisors is "entitled to" vote. It simply does not create any right at all. Rather, § 15.2-1428 sets forth the requirements for passage of an appropriations ordinance in excess of $500: "a recorded affirmative vote of a majority of all members elected to the governing body." Nor does this section require, as Hooker suggests, that all members of the body vote, Opposition at 10, but, instead, it sets the threshold for how many affirmative votes are required to pass an appropriations ordinance. In other words, a five-member board, such as the Roanoke County Board of Supervisors, must have three affirmative votes to pass an appropriations ordinance in excess of $500. This vote could be achieved in a meeting at which two members are absent and the three members in attendance all vote in the affirmative or, alternatively, in a meeting with all five members present and two abstaining.[7] There is no requirement, as Hooker incorrectly suggests, Opposition at 10, that all five members cast a vote on an appropriations ordinance.[8]

Hooker also attempts, in her Opposition, to bolster her Bowman argument by claiming that "[p]ost-Bowman decisions continued to find in the mathematical statutory language, "'each … share... is entitled to one vote,' a legal right for shareholders to vote their shares." Opposition at 9. Hooker's argument is disingenuous for at least two reasons. First, it mischaracterizes the Bowman decision as finding a right to vote in "mathematical statutory language." The statute at

---

[7] This is in contrast to other types of ordinances which may be adopted by a majority vote of members present and voting, see Va. Code § 15.2-1427, which could occur, for example, at a meeting with three members present and two voting in the affirmative and one voting negative.
[8] And even if there was such a requirement that all members cast a vote, that is not the same as conferring a right to vote.

9

issue in Bowman was not "mathematical" – it expressly conferred the right to vote ("is entitled to"). Second, none of the post-Bowman decisions Hooker cites actually finds an additional legal right to vote in "mathematical statutory language." Rather, each of the decisions she cites merely describes what the Bowman Court did – recognize a statutory right to vote one's shares – and then consider and, in most cases, reject finding a right conferred by statute.

Indeed, in only two of the six cases cited by Hooker, Opposition at 9, does the court find that a right exists but neither case is applicable to the facts of this case.[9] Specifically, in Roland v. Bon Air Cleaners, Inc., 19 Va. Cir. 184 (Richmond City Cir. Ct. 1990), the court found that the Virginia Unemployment Compensation Act confers on all unemployed persons to right to seek benefits under the Act. There are no similarities between the Virginia Unemployment Compensation Act and § 15.2-1428 and so Roland provides no support for Hooker's claim. And in Gulledge v. Dyncorp, Inc., 24 Va. Cir. 5348 (Fairfax County Cir. Ct. 1989), also cited by Hooker, the court stated that "[t]he voting rights of directors are similar to those of shareholders and should also be protected by public policy" but then sustained the demurrer to the Bowman claim on several other grounds. The voting rights of directors of corporations, who owe a

---

[9] And in the four other cases that Hooker claims found a legal right to exist, Opposition at 9, the courts actually declined to find any statutorily conferred right. See Williams v. Virginia, 2012 U.S. Dist. LEXIS 97805 (E.D. Va. 2012) (finding that the State Employee Fraud, Waste and Abuse Hotline created pursuant to an Executive Order did not give rise to a Bowman claim); United States ex rel. Martinez v. Virgnia Urology Ctr., P.C., 2010 U.S. Dist. LEXIS 77078 (E.D. Va. 2010) (finding that neither the Virginia Fraud Against Tax Payers Act or the Reporting Requirements for Physicians in Va. Code § 54.1-2909 formed the basis for a Bowman claim); Devnew v. Brown & Brown, Inc., 396 F. Supp. 2d 665 (E.D. Va. 2005) (finding that the statutes regulating the insurance industry did not confer a statutory right to transact insurance business or to hold an insurance agent license); Dray v. New Mkt. Poultry Prods., Inc., 258 Va. 187 (Va. 1999) (holding that the Virginia Meat and Poultry Products Inspection Act did not confer a right or duty to report unsanitary conditions). Thus, none of these cases advance Hooker's cause.

fiduciary duty to the corporation, id. at 541, are not comparable to §15.2-1428 and, therefore, Gulledge likewise provides no support for Hooker's claim.

In sum, unlike former § 13.1-32 which explicitly states that shareholders are "entitled to one vote," § 15.2-1428 does not confer on Hooker a right to vote on matters of appropriations. And because the Virginia Supreme Court has consistently characterized the Bowman exception to the employment at-will doctrine as "narrow," City of Va. Beach v. Harris, 259 Va. 220, 232 (Va. 2000) (quoting Lawrence Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 98 (1996), this court should decline Hooker's invitation to create a right where Virginia's General Assembly has not seen fit to do so.

### B. Hooker's alleged termination does not violate the public policy underlying Va. Code § 15.2-1428.

In the final section of her Opposition, Hooker argues, ad nauseum, that her alleged termination violated the public policy underlying § 15.2-1428 because that statute confers on her a right to vote on appropriations matters as did, she argues, the statute at issue in Bowman confer on shareholders the right to vote their shares. To be sure, Bowman makes clear that the right to vote (at least with respect to shareholder voting rights) includes the right to vote free from coercion or reprisal. But since § 15.2-1428 does not confer the right at all, it does not follow that there is implied in that section the right to vote free from coercion or reprisal.

The public policy underlying § 15.2-1428 is not, as Hooker erroneously claims, that "an elected official should vote 'free from duress' and 'without fear of reprisal.'" Opposition at 13. The public policy underlying § 15.2-1428 is that certain votes involving spending, taxing, or borrowing money must be done by recorded vote and by a majority of members elected for purposes of transparency and accountability. As demonstrated in Defendants' Memorandum, at 13-14, there are no allegations in the Amended Complaint, nor any argument in her Opposition,

11

that suggest that Hooker's termination will cause votes not to be recorded or that it results in less transparency and accountability in spending, taxing, or borrowing. Accordingly, Hooker has failed to state a claim for wrongful termination under <u>Bowman</u> and Count II must be dismissed for this additional reason.

## CONCLUSION

For the reasons stated above, Hooker has failed to allege facts to state any plausible claim for relief. Defendants accordingly request that the Court dismiss Hooker's Amended Complaint in its entirety, and award Defendants such further relief as the Court deems appropriate.

Respectfully Submitted,

Cheryl Facciani, Timothy Greenway, Brent Hudson, Dr. Kenneth Nicely

By Counsel

/s/  Stacy L. Haney
Stacy L. Haney (VSB 71054)
R. Matthew Black (VSB 94663)
HANEY PHINYOWATTANACHIP PLLC
9201 Arboretum Pkwy, Suite 160
Richmond, VA 23236
Tel:   (804) 500-0310
Fax:   (804) 500-0309
shaney@haneyphinyo.com
mblack@haneyphinyo.com
*Counsel for Defendants Cheryl Facciani, Timonthy Greenway, Brent Hudson, and Dr. Kenneth Nicely*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of March, 2024, I have electronically filed the foregoing using the CM/ECF system, which will automatically send email notification of such filing to counsel of record as follows:

>Thomas E. Strelka (VSB 75488)
>L. Leigh Rhoads (VSB 73355)
>Brittany M. Haddox (VSB 86416)
>Monica L. Mroz (VSB 65766)
>STRELKA EMPLOYMENT LAW
>4227 Colonial Ave.
>Roanoke, VA 24018
>Tel:    (540) 283-0802
>thomas@strelkalaw.com
>leigh@strelkalaw.com
>brittany@strelkalaw.com
>monica@strelkalaw.com
>*Counsel for Martha Kay Baird Hooker*

>/s/  Stacy L. Haney
>Stacy L. Haney (VSB 71054)
>R. Matthew Black (VSB 94663)
>HANEY PHINYOWATTANACHIP PLLC
>9201 Arboretum Pkwy, Suite 160
>Richmond, VA 23236
>Tel:   (804) 500-0310
>Fax:   (804) 500-0309
>shaney@haneyphinyo.com
>mblack@haneyphinyo.com
>*Counsel for Defendants Cheryl Facciani, Timonthy Greenway, Brent Hudson, and Dr. Kenneth Nicely*